[No. 4505.]

## LEWIS SUTTON v. T. W. FASSETT.

PLAINTIFF IN EJECTMENT MUST SHOW TITLE.—If the title to a subdivision of public land in this State passed to the State by virtue of the act of July 23, 1866, entitled " An Act to quiet land titles in California," then a patent afterwards issued for the same by the United States is void, and one in possession need not deraign title from the State in order to defend his possession, in an action of ejectment brought by the patentee.

ACT OF CONGRESS TO QUIET LAND TITLES IN CALIFORNIA.—The first section of the act of Congress of July 23, 1866, to quiet land titles in California, does not relate to lands which had been segregated by the State as swamp and overflowed.

IDEM. — Lands, not swamp or overflowed, which had been surveyed by the United States prior to the act of Congress of July 23, 1866, and which were segregated as swamp and overflowed by the State by surveys conforming to those of the United States, did not pass to this State by virtue of said act of Congress, unless the State surveys made by the county surveyor were approved by the Surveyor-General of this State prior to the passage of said act.

IDEM.—The certifying of lands to this State to which said act did not apply, did not transfer the title under said act.

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

Ejectment to recover the west half of the northwest quarter of section one, and the east ten rods of the east half of the northeast quarter of section two, all township number seven north, range number four east, Mount Diablo meridian, lying in the county of Sacramento. The land was surveyed and platted by the United States prior to September, 1860. It was listed over to this State by the Commissioner of the General Land Office, on the 25th day of June, 1872, under the act of Congress of July 23, 1866, to quiet land titles in· California. The State survey of the same as swamp and overflowed conformed to the survey

made by the United States. The court below rendered judgment for the defendant. The plaintiff appealed.

The other facts are stated in the opinion.

*Beatty & Denson and Presley Dunlap,* for the Appellant.

*L. S. Taylor and McCune & Welty,* for the Respondent.

By the Court, RHODES, J.:

The plaintiff claims title to the premises in controversy under a patent issued by the United States, May 20, 1873; and the defendant claims title under a patent issued by this State, as for swamp and overflowed land, March 25, 1867. If the title to the land vested in the State by virtue of the act of Congress of September 28, 1850 — known as the Arkansas Act—or by operation of the act of Congress of July 23, 1866 (14 U. S. Stats. at Large, 218), and proceedings had under that act, then the plaintiff's patent was void; but if the title did not so vest in the State, the plaintiff's patent is valid and vested the title in him.

It was not contended on the argument that the land was in fact swamp and overflowed land; but it is claimed by the defendant that the title vested in the State by operation of the act of July 23, 1866. The case was tried in the court below, and argued in this Court on the theory that the first section of the act is applicable to lands of this character, and that it was incumbent on the defendant to show that his grantor was a purchaser, in good faith, from the State. But counsel are wrong in both positions. It was unnecessary for the defendant to show that he was a purchaser from the State, for if the title vested in the State, by virtue of the act of July 23, 1866, the plaintiff's patent was inoperative, for the want of title in the United States, and he could not recover in this action.

The first section of that act does not relate to lands which had been segregated by the State as swamp and overflowed lands. The only section which purports to grant to the State—or in other words, to confirm such segregation—is the fourth section. That section provides for three classes

of lands: *First,* lands which are represented as swamp and overflowed lands, upon the approved plats of surveys made by the United States; *second,* lands which have been segregated as swamp and overflowed land by the State, the surveys and maps of which shall be found to conform to the surveys made by the United States; and *third,* swamp and overflowed land in townships which had not been surveyed, or in which the State surveys did not conform to the United States surveys. The lands in this case are not included in the first or third classes, but if granted to the State by the act, they are embraced in the second class. The provision of the section relating to that class is as follows: "The Commissioner shall direct the United States Surveyor-General for the State of California to examine the segregation maps and surveys of the swamp and overflowed lands made by said State; and where he shall find them to conform to the system of surveys adopted by the United States, he shall construct and approve township plats accordingly, and forward them to the General Land Office for approval." The lands to which this provision applies, are lands which had been segregated by the State as swamp and overflowed land, prior to the passage of the act, and by surveys which conform to those made by the United States; and in order that the title should vest in the State, it is requisite that the Surveyor-General should examine the surveys and maps of the State segregation and prepare township plats showing the lands segregated by the State; that such plats should be approved by him and the Commissioner of the General Land Office; and that the lands should be certified over to the State. It appears in this case that the surveys made by the county surveyor were approved by the Surveyor-General of this State on the 23d day of July, 1866. Such approval was requisite in order to make the segregation by the State complete. The surveys were approved by the Surveyor-General of the State on the same day that the act of Congress was passed. The lands in controversy do not come within the provisions of the clause of the section above referred to, because they do not affirmatively appear

to have been segregated by the State as swamp and over-flowed lands before the passage of the act.

The certifying of the lands to the State did not transfer the title, because the Commissioner had no authority to certify any lands to the State, except those to which the act of Congress applied. The act of Congress of August 3, 1854, declares that such lists of lands shall be "perfectly null and void" when the lands are not embraced in the acts of Congress.

Judgment and order reversed, and cause remanded for a new trial.

Mr. Justice CROCKETT did not express an opinion.