[No. 12849.   In Bank. — December 29, 1888.]

S. M. DAVIDSON, EXECUTOR ETC., APPELLANT, *v.* THE CUCAMONGA FRUIT AND LAND COMPANY, RESPONDENT.

STATE LANDS — ACTION TO ANNUL PATENT — VOID CERTIFICATE OF PURCHASE. — In order to maintain an action to annul a patent issued by the land department of the state, the plaintiff must connect himself with the source of title, and must show that his rights are injuriously affected by the patent. A certificate of purchase issued to one not entitled to receive it confers no rights, and the person holding such certificate is a stranger to the title, and cannot be heard as a plaintiff to question the rights of the defendant under a state patent.

ID. — CERTIFICATE OF PURCHASE — PRIMA FACIE EVIDENCE. — A certificate of purchase of state land is *prima facie* evidence of title; but *prima facie* evidence can be contradicted and overcome by other evidence, and it may be shown that the holder of such certificate was not entitled to receive it.

ID. — AGRICULTURAL LANDS — REQUIREMENT OF ACTUAL SETTLEMENT. — The provisions of the constitution and of the Political Code requiring actual settlement upon lands belonging to the state which are fit for cultivation are imperative; and an applicant for such land must not only state the requisite facts as to such settlement in his affidavit, but the facts as stated must be true, or he can acquire no rights under his application.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial.

The facts are stated in the opinion.

*Bicknell & White*, and *Chapman & Hendrick*, for Appellant.

*Curtis & Otis*, and *J. C. Lynch*, for Respondent.

BELCHER, C. C. — The facts of this case may be briefly stated as follows: In January, 1869, John Mullan made application to purchase from the state of California a certain tract of land in San Bernardino County, containing six hundred acres.   The application was approved by the surveyor-general on the twenty-first day of August, 1869, and on the fifteenth day of October following Mullan paid to the county treasurer of San Bernardino County twenty per cent of the purchase price, and interest on the balance up to January, 1870, and thereafter in the same month received from the register of the state land-office a certificate of purchase, which was in the usual form.   On the first day of May, 1880, Mullan not having paid the interest due on the balance of the purchase price, the register of the land-office forwarded to the district attorney of San Bernardino County a statement of all the lands in that county upon which payments had not been made, and thereafter the district attorney, having given the notice required by law, commenced an action in the superior court of the county, in the name of the people of the state, to foreclose the interest of Mullan in said land, and to annul his certificate of purchase.   Afterward, such proceedings were had in the action that on the fourth day of January, 1881, judgment was given and entered foreclosing the interest of Mullan in the land, and annulling his certificate. Mullan did not pay the amount due the state, nor the costs which had accrued, within twenty days after the entry of the judgment, and thereupon a certified copy of the judgment was filed in the office of the register, and a like copy in the office of the county recorder.   On the

twenty-ninth day of December, 1884, on motion of the assignee of Mullan, an order was made and entered by the superior court vacating the judgment above recited, and after that order was made, the assignee paid to the county treasurer all the interest then unpaid on his certificate.

On the twenty-fifth day of October, 1882, one Charles R. Higgins made application to purchase from the state two hundred and eighty acres of the land described in Mullan's certificate, and on the 30th of December following, his application was approved by the surveyor-general. Thereafter, within fifty days, Higgins made the first payment, and on the twenty-ninth day of March, 1883, a certificate of purchase was issued to him for the land described in his application. On the twenty-seventh day of September, 1883, Higgins sold, assigned, and transferred to H. B. Thomas his certificate, and all his right to the land mentioned therein. On the twenty-eighth day of August, 1885, Thomas died, leaving a last will and testament, in which the plaintiff was named as executor. The will was admitted to probate, and the plaintiff was appointed and duly qualified as executor thereof. On the fifteenth day of November, 1885, plaintiff made full payment to the county treasurer for the land described in the certificate issued to Higgins, together with a fee for the patent, and surrendered to the register of the land office the certificate, and demanded a patent for the land.

The certificate issued to Mullan was assigned to the defendant herein, and in the month of September, 1886, the register of the land-office, without any hearing before him to determine which party was entitled to purchase the land, prepared a patent for the land described in the certificate and sent it to the governor, together with a certificate that the laws in relation thereto had been complied with, that payment in full had been made, and that the Cucamonga Fruit Company was

entitled to it.    This patent was, on the twentieth day of
September, 1886, signed by the governor, attested by the
secretary of state, sealed with the great seal of the state,
countersigned by the register, and delivered to the de-
fendant.

This action was brought in February, 1887, to obtain
a decree,—1. That the plaintiff's title to the land in
the certificate issued to Higgins is good and valid, and
that defendant has no right, title, or interest therein;
2. That the patent issued to defendant is null and void;
3. That the defendant be enjoined from asserting any
claim to the land, or any part thereof.    The court below
found that the lands in controversy were agricultural
lands, and that Higgins was not at the time he made his
application to purchase the same, or at any time, an ac-
tual settler thereon.    Judgment was thereupon entered
in favor of defendant, from which, and from an order
denying him a new trial, plaintiff appealed.

The principal question to be considered here is: Did
the plaintiff have such an interest in the land as would
enable him to maintain an action to annul the defend-
ant's patent?

It is well settled that in order to maintain the action,
plaintiff must connect himself with the source of title,
and must show that his rights are injuriously affected
by the patent.    (*People* v. *Stratton*, 25 Cal. 242; *Durfee*
v. *Plaisted*, 38 Cal. 80; *Smelting Co.* v. *Kemp*, 104 U. S. 636.)
In the last-named case the court, speaking by Mr. Jus-
tice Field of a patent issued by the land department of
the general government, said: "If in issuing a patent
its officers took mistaken views of the law, or drew er-
roneous conclusions from the evidence, or acted from
imperfect views of their duty, or even from corrupt mo-
tives, a court of law can afford no remedy to a party
alleging that he is thereby aggrieved.    He must resort
to a court of equity for relief, and even there his com-
plaint cannot be heard unless he connect himself with

the original source of title, so as to be able to aver that his rights are injuriously affected by the existence of the patent; and he must possess such equities as will control the legal title in the patentee's hands. It does not lie in the mouth of a stranger to the title to complain of the act of the government with respect to it."

This language is equally applicable where one is seeking to annul or set aside a patent issued by the land department of the state.

Now, the only title shown by the plaintiff was the certificate of purchase issued to Higgins. This certificate, it is true, was *prima facie* evidence of title (Pol. Code, sec. 3514); but *prima facie* evidence can be contradicted and overcome by other evidence. When Higgins made his application for the land, the constitution provided that " lands belonging to this state which are suitable for cultivation shall be granted only to actual settlers" (art. 17, sec. 3), and the code at that time required the applicant to state in his affidavit " that he is an actual settler thereon." (Pol. Code, sec. 3500, as amended in 1880.) These provisions are imperative, and the rule is well settled that an applicant must not only state in his affidavit all the facts required to be stated therein, but the facts as stated must be true, or he can acquire no rights under his application. (*McKenzie* v. *Brandon,* 71 Cal. 209; *Harbin* v. *Burghart,* 76 Cal. 119.)

Higgins stated in his affidavit that he was an actual settler on the lands applied for, and whether he was or not was an issue presented by the pleadings. The court found, as we have seen, that his statement in this regard was not true, and the correctness of this finding is not questioned. It necessarily follows that Higgins was not entitled to receive a certificate of purchase, and that the certificate issued conferred upon him no rights. This being so, he was a stranger to the title, and neither he nor his assignee can be heard to question the defendant's rights under its patent.

It is unnecessary to consider the other questions argued by counsel, and we therefore advise that the judgment and order be affirmed.

HAYNE, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.