[No. 13055.    In Bank. — February 5, 1890.]

## CUCAMONGA FRUIT-LAND COMPANY, RESPONDENT, *v.* FRANK MOIR, APPELLANT.

INDEMNITY SCHOOL-LANDS — BOOTH ACT — VOID UNITED STATES PATENT — COLLATERAL ATTACK — EJECTMENT. — The listment of land to the state of California in lieu of a sixteenth section, on the first day of July, 1870, which listment was confirmed by the act of Congress of March 1, 1877, known as the Booth act, cannot, after the passage of such act, be canceled by the Secretary of the Interior, and a patent of the United States issued subsequent to an attempted cancellation is without authority of law, and void, and may be collaterally attacked in an action of ejectment based thereon by a defendant having a mere naked possession, though he fails to show priority with the title of the state. (McFARLAND, J., and PATERSON, J., dissenting.)

ID. — APPLICATION TO PURCHASE LIEU LAND — VOID CERTIFICATE — COLLATERAL ATTACK — CURATIVE ACTS. — An application to purchase lieu lands of the state under the act of March 28, 1868, containing no description of the land by legal subdivisions, in an affidavit, as required by that act, is void, though such description be contained in an unverified statement accompanying the affidavit; and a certificate of purchase issued thereunder is void, if the application has never been cured, and may be attacked by a mere possessor of the land. The curative acts of 1870 and 1872 cannot apply to such an application, if the land did not then belong to the state, though afterwards confirmed to the state by the Booth act.    (Per THORNTON, J., WORKS, J., and SHARPSTEIN, J.; PATERSON, J., and McFARLAND, J., dissenting.)

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*H. T. Hazard,* and *Chapman & Hendrick,* for Appellant.

*Curtis & Otis, Brunson, Wilson & Lamme,* and *J. C. Lynch,* for Respondent.

Thornton, J. — Ejectment.    Judgment for plaintiff; appeal by defendant from judgment and order denying his motion for a new trial.

The land in controversy is the west half of section 22, of township one (1) south, range seven (7) west, San Bernardino meridian.

The plaintiff claimed under a patent of the United States for this land issued to one Marsicano, bearing date March 20, 1886, and a deed from Marsicano to it conveying this land, bearing date the 15th of December, 1886.

The documents above mentioned were introduced in evidence by plaintiff, and it then rested.

This land was listed to the state of California on the 1st of July, 1870.

On the 11th of December, 1885, the commissioner of the general land-office of the United States canceled this listing to the state for the reasons stated in his letter, which appears in the record.

The reasons stated in this letter are as follows: The whole of section 22, above mentioned, had been listed to the state of California on the date above mentioned in lieu of section 16, township 13 south, range 3 west, San Bernardino meridian; but a part only of this sixteenth section, viz., 343.13 acres, was within a private grant. The remainder of the said sixteenth section, viz., 296.87 acres, was surveyed in its proper place, according to the official plat of the township, which had been filed on the 20th of October, 1875; that as to this latter amount (296.87 acres) the selection was invalid, and the same was accordingly on that day canceled as to the west half of said section 22, under the provisions of section 2 of the act of Congress of March 1, 1877.

It was stipulated that Frank Moir, the defendant, made an application to the state of California to purchase the west half of section 22, above mentioned; that this application bore date the 16th of February, 1883, and was filed in the office of the surveyor-general of California on the 15th of March, 1883; that at the time Moir made this application to purchase he had filed his declaration of intention to become a citizen of the United States, was a resident of the state of California, and was of lawful age.

It was further stipulated that Moir and another person were both living on this land and claiming adversely to each other at the time he (Moir) made his application to purchase.

Moir's application and his affidavit accompanying it appear in the record.

Moir claimed title under this application, which, and the accompanying papers, were put in evidence. The defendant also put in evidence the application of John Mullan to the state of California to purchase the whole of section 22, dated the 12th of January, 1869, and filed in the office of the surveyor-general of this state on the 15th of the same month, and the accompanying affidavit. He also introduced in evidence the approval of Mullan's application, bearing date the twenty-first day of August, 1869.

A certificate of purchase issued to Mullan by the surveyor-general of this state, dated the 30th of October, 1869, is in the record, but as it relates to a different tract of land from that in suit here, it need not be further noticed.

It was stipulated that Mullan assigned his certificate of purchase for the land in controversy to Marsicano, the grantor of plaintiff, on the twentieth day of October, 1881; that he executed to Marsicano a conveyance of the same land in the fall of 1884, and that plaintiff, prior to the commencement of this action, had succeeded

to whatever title Mullan took by his certificate of purchase, and held it when this action was begun.

It was further stipulated that the defendant was in the possession of the land in suit at the time this action was commenced, and was living on the land, claiming it adversely to the plaintiff.

Defendant contends that the patent to Marsicano, issued in 1886, is void *ab initio*, and that he had a right to show this on his mere possession as defendant. This contention is based on the admitted fact that the land had been listed to the state of California, in lieu of a sixteenth section, on the first day of July, 1870, which listment had been confirmed by the act of Congress of March 1, 1877, commonly known as the Booth act (19 Stats. at Large, 267), relating to indemnity school selections in the state of California. By the second section of this act, it is provided "that where indemnity school selections have been made and certified to said state" of California, "and said selection shall fail by reason of the land in lieu of which they were taken not being included within such final survey of a Mexican grant, or are otherwise defective or invalid, the same are hereby confirmed, and the sixteenth or thirty-sixth section, in lieu of which the selection was made, shall, upon being excluded from such final survey, be disposed of as other public lands of the United States."

We are of opinion that the listment to the state, made in July, 1870, came within the above provision quoted from section 2 of the act of Congress of 1877, and was confirmed by it. It having been so confirmed, the title passed to the state of California on such confirmation.

It follows that the cancellation of the listment by the Secretary of the Interior, made in 1883, was without authority; that when the patent to Marsicano was issued in 1886, the United States had no title, and such patent was void.

The plaintiff took no title to the land in controversy under the patent above mentioned.

The plaintiff also contends that he acquired title to this land by virtue of the application of John Mullan to purchase it from the state in 1869, and a certificate of purchase thereafter issued to Mullan in October, 1869.

Mullan's application was made under the act of the 28th of March, 1868. (Stats. 1867, secs. 53–58, p. 522.)

This section (53) requires that, in making application to purchase such lands as are mentioned in Mullan's application, he shall describe the same in an affidavit by legal subdivisions. The affidavit of Mullan contained no description such as is required by the statute, and in fact no description whatever. This, according to the decision in *Hildebrand* v. *Stewart*, 41 Cal. 387, is fatal to the application. In that case, as in this, the affidavit failed to describe the land by legal subdivision or otherwise, though the land was properly described in both cases in an unsworn paper accompanying the affidavit, and styled the application. The court held the application *invalid* and nugatory. It was there said by Sprague, J.: "The legislature has thought proper to require the above facts to be embodied in an affidavit of the applicant, and it is not for the court to determine that the same items may as well be embodied in a statement of the applicant not verified by his oath, or to sanction a different form or mode of proceeding in the purchase of these lands from that prescribed by the legislative department."

The application of Mullan must then be held to have been in its beginning void.

It is argued by plaintiff that the application was cured by the first section of the act of March 24, 1870. (Stats. 1869–70, p. 352.) But this section refers only to applications made for the purchase of lands belonging to the state. And as we have seen, when Mullan's application was made to purchase in 1869, the land sought

⁺⁻ be purchased did not belong to the state, and did not become the property of the state until confirmed by the act of Congress of March 1, 1877, above referred to.

Nor is Mullan's application cured by the act of March 27, 1872 (Stats. 1871–72, p. 587), for the reason that the land did not belong to the state when the act of 1872 was passed. For the reasons above given, the listment to the state of 1870 was void, and the land did no belong to the state until after the passage of the Booth act, in 1877.

*Rowell* v. *Perkins*, 56 Cal. 226, is referred to as sustaining plaintiff's contention that the application of Mullan was cured by the act of 1872. But in that case, although the application was made in July, 1869, and the listment made to the state in July, 1870, still the court rested its ruling on the fact that the land belonged to the state when the act of March, 1872, was passed. After stating that the act of 1872 is very broad and comprehensive, the opinion proceeds thus: "It validates every application to purchase lands 'from the state' when payment has been made, in whole or in part, to the treasurer of the proper county: When the act of 1872 was passed, the state owned the land, and by that act disposed of it."

The opinion then proceeds to declare that the act of 1872 validated an application, though the state did not own the land *when* the application was made. But it was not held in the case cited, nor has it ever been held, that it validated an application to purchase land not owned by the state when the curative act was passed. It could not have been intended by the act of 1872 to pass any title or right to land which the state did not own before the act of 1872 was passed.

No title could have passed to the land in controversy by the certificate of purchase to Mullan which appears in the record, for the reason above stated, that it had reference to a different parcel of land.

A certificate of purchase to Mullan *for the land in con-*

*troversy,* admitting that it is shown by the record that he had such certificate, was void for the defect in the application above pointed out, which defect has never been cured.

The plaintiff derived no title, either by the patent to Marsicano or by Mullan's certificate to purchase. Each document was issued without authority of law, and is void against defendant, conceding that he showed no title except naked possession. (*Sutton* v. *Fassett,* 51 Cal. 12; *Pratt* v. *Crane,* 58 Cal. 533; *Kile* v. *Tubbs,* 59 Cal. 192; *Southern P. R. R. Co.* v. *McCusker,* 67 Cal. 67; *Doolan* v. *Carr,* 125 U. S. 618, and cases there cited.)

The judgment and order are reversed, and cause remanded for a new trial.

So ordered.

WORKS, J., and SHARPSTEIN, J., concurred.

BEATTY, C. J., and FOX, J., concurred in the judgment.

McFARLAND, J., dissented.

PATERSON, J., dissenting.—I dissent. The plaintiff has purchased and paid for the title of the United States, and also that of the state; yet it is held that the defendant, although he has never connected himself with either of the paramount sources of title, and does not possess the necessary qualifications to purchase the lands in controversy, may prevail in an action of ejectment. The misfortune of the plaintiff seems to be, — according to the theory of defendant and the decision of the majority,—that when the United States sold it had no title, and when the state sold *it* had no title to convey; and therefore, during the time the game of battledoor and shuttlecock for this land was going on between the officers of the land departments of the two governments, the plaintiff and its grantors gambled their money

in vain. I venture to say that if the grantors had been individuals instead of governments, there would be no question that a grant, bargain, and sale deed would convey to their grantees the title held by the grantors at the time of the grant and that afterward acquired; and that as against an intruder—one who did not have even a contract of purchase and sale from either — the grantees would prevail in ejectment. For this reason, and for other reasons stated in the former decision of this court *affirming* the decision of the court below, I am unable to agree with the majority of the court in their final conclusion.

On the 4th of February, 1890, Mr. Chief Justice Beatty rendered the following concurring opinion:—

BEATTY, C. J. — Three justices of the court concurred in the opinion filed in this case, and three dissented. I concurred in the judgment only. At the time of expressing this qualified concurrence, it did not occur to me that the result was to leave it uncertain what particular points had been decided. To relieve this uncertainty, I take occasion now to say that I concur in that part of Justice Thornton's opinion relating to the claim of plaintiff based on the United States patent to Marsicano. As to the claim based upon Mullan's application to purchase from the state, I express no opinion, because the record does not show to my satisfaction that Mullan ever received a certificate of purchase covering the demanded premises, and the points discussed are not involved.

The following is the former opinion of the court, referred to in the above dissenting opinion of Mr. Justice Paterson, rendered in Bank on the 31st of July, 1889:—

PATERSON, J. — Ejectment. The complaint is in the ordinary form. The answer specifically denies plaintiff's ownership, and that the defendant wrongfully or unlawfully entered into or withholds possession of the

premises.   Plaintiff claims title under a patent of the United States and a certificate of purchase from the state of California.   Defendant contends that the patent is void, because the United States had no title, the land having been listed to the state in 1870, and confirmed by Congress; that the certificate of purchase issued to Mullan, defendant's grantor, is void, because the state never had any title until the passage of what is known as the Booth bill, March 1, 1877, eight years after Mullan's certificate of purchase had been issued, and seven years after the act of March 24, 1870, had been passed.   The defendant's answer does not allege, and the evidence does not show, that he occupies such a *status* as authorizes him to control the legal title, or to question the authority of the officers who issued the patent.   A party seeking to attack a patent must show that he is connected in some way with the original source of title, so as to be able to aver that his rights are injuriously affected by the existence of the patent.   (*Fletcher* v. *Mower*, 56 Cal. 424; *Dodge* v. *Perez*, 2 Saw. 653; *Davidson* v. *Land Co.*, 78 Cal. 4; *Kentfield* v. *Hayes*, 57 Cal. 409.)

Defendant's claim to the land in controversy rests upon an application to purchase from the state.   Conceding that he might show, without pleading them, the facts upon which he relies, it is sufficient to say that he has failed to aver or to prove the conditions necessary to make his application valid.   His application did not allege, nor does the evidence show, that he had not entered any land in part satisfaction of the unsold portion of the five-hundred-thousand-acre grant, or of the grant in lieu of the sixteenth and thirty-sixth sections.   At the time his application was filed the statute required the applicant to state, among other things, " that there is no valid claim to such land other than that of the applicant; . . . . that he has not entered any land in part satisfaction of the unsold portion of the five-hundred-thousand-acre grant, or of the grant in lieu of the six-

teenth or thirty-sixth sections, which, together with that now sought to be purchased, exceeds 320 acres." (Pol. Code, sec. 3500.) The application of Moir did state that there was no valid claim other than his own, but did not state that he had "not entered any land in part satisfaction," etc. At the time the application was filed, the plaintiff and its grantors held a certificate of purchase from the state of California for the land, and it appears from the evidence that defendant and one ―― were both living on the land, claiming adversely to each other at the time the application was filed. Having failed to establish a privity with the paramount source of title,— to show that he was duly qualified according to law to purchase the land in controversy, and had fully complied with the laws of the state of California regulating the sales of such lands,—he is not in a position to question the title of the plaintiff. (*Peabody* v. *Prince*, 78 Cal. 511; *Chapman* v. *Quinn*, 56 Cal. 278; *McKenzie* v. *Brandon*, 71 Cal. 209; *Plummer* v. *Woodruff*, 72 Cal. 29; *Harbin* v. *Burghart*, 76 Cal. 119.) Mullan's certificate of purchase is not void, even though his application and affidavit were defective (*Rowell* v. *Perkins*, 56 Cal. 220); and a certificate is sufficient to maintain an action in ejectment. (*Young* v. *Shinn*, 48 Cal. 26; *Langenour* v. *Hennagin*, 59 Cal. 625.)