[Department One. — May 11, 1883.]

## DENNIS C. DINAN, RESPONDENT, v. F. FITZ GIB-BON ET AL., APPELLANTS.

ASSAULT — DEADLY WEAPON — PROTECTION OF PROPERTY — INSTRUCTIONS. — The plaintiff sued to recover damages for an alleged assault in which he was seriously wounded by the discharge of a gun.   The defendant Gibbon and the mother of the plaintiff were the owners of adjoining lots in the city of San Francisco, and a dispute existed between them as to the division line.   Gibbon erected a shed about ten feet high near the line, and the plaintiff claimed that the roof of the shed projected over upon the land of his mother.   Gibbon was notified of the projection, but disregarded the notice.   There was evidence tending to show that he believed the shed to be wholly on his own land, that at the time of the assault, the plaintiff, assisted by several other persons, was proceeding with force and violence to remove what he claimed to be the projecting portion of the roof, that Gibbon was not present, but his nephew, acting under directions from him, appeared with a loaded gun, and declared his intention to protect the shed from injury, that the plaintiff and one of the persons with him attempted to get possession of the gun, and that a struggle ensued in the course of which the gun was discharged and the wound inflicted.   The court instructed the jury substantially that the mere fact of the use of such a weapon gave the plaintiff the right to recover.   *Held*, that the instruction was erroneous.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of Mr. JUSTICE McKEE.

*Jarboe & Harrison,* for Appellants, argued that the instruction of the court as to the right to use fire-arms in defense of property was erroneous, citing section 197 of the Penal Code; *Pond* v. *The People,* 8 Mich. 166; *People* v. *Flanagan,* 60 Cal. 2; *Miller* v. *State,* 74 Ind. 1; *Taylor* v. *Clendening,* 4 Kan. 534; *Morris* v. *Platt,* 32 Conn. 75.

*Fox & Kellogg,* for Respondent, argued that the defendants were not acting in defense of person or habitation, and that the instructions of the court, taken as a whole, fairly submitted the case to the jury, citing *Brooks* v. *Crosby,* 22 Cal. 42; *Conroy* v. *Duane,* 45 Cal. 597; *Siemers* v. *Eisen,* 54 Cal. 418.

McKEE, J. — This was an action to recover damages as compensation for injuries sustained from an assault on the plaintiff alleged to have been committed by the defendants.

The case was given to the jury upon evidence tending to show that the alleged assault had been committed under the following circumstances: Defendant Gibbon and the mother of the plaintiff were owners of adjacent parcels of land in the city of San Francisco. There was a dispute between them as to the true division line of the lots. Gibbon had constructed near to what he believed to be the line a shed about ten feet high, the roof of which, according to the assertion of the plaintiff, projected over a part of his mother's lot and came near to her house. Notice of the projection was given to the defendant, but he gave no heed to it. In that state of the question, the plaintiff on the 25th of September, 1876, took several men on to his mother's lot to saw off that part of the roof of the shed which extended over so much of his mother's lot as lay between her house and the supposed dividing line, and to move her house close up to that line. One of the men had mounted the roof of the shed and was in the act of sawing off the projection when the defendant, Quinlan, appeared on the balcony of the house on Gibbon's lot armed with

a double-barreled shotgun, which Gibbon had loaded with powder and buckshot, and put in the hands of Quinlan, "to watch
his property against the Dinans." To prevent Quinlan from
using the gun against the person on the shed, the plaintiff and
another caught hold of the gun and a contest resulted between
the parties, in which the gun in the hands of Quinlan was discharged into the body of the plaintiff, severely wounding him.

On submitting the case to the jury, the court, among other
things, instructed them as follows :—

"1. You are instructed that the controversy over this piece
of land did not justify the use of fire-arms in its settlement; that
a person has no right to use deadly weapons excepting it be in
the defense of life or in the protection of his domicile. Those
are the only cases in which a party is authorized under the laws
of this State to use anything which is calculated to produce
death.

"2. If you believe from the evidence that the defendant did
use this weapon for the purpose of this transaction — for the purpose of producing great bodily injury — if he used it, in fact, at
all, to resist the encroachment even of the plaintiff in this action,
then it is your duty, under the law, to find a verdict against him
for the actual damages which the plaintiff sustained, whether
there was malice in it or not.

"3. The very fact that the defendant used this unlawful
weapon gives the plaintiff the right to recover."

Of course, if the evidence showed that the defendant only used
the weapon for the deliberate purpose of producing great bodily
injury on the plaintiff, it would have been the duty of the jury
to find for the plaintiff. The use of a deadly weapon for such a
purpose would render a party not only civilly but criminally
liable. No one is justifiable in law, even under a pretense of
right, to inflict on another a wanton and malicious assault. But
if the defendant used the weapon "to resist the encroachment of
the plaintiff" as a trespasser on his premises, such use would
not be unlawful, unless it was unnecessary. For there is no
doubt that a person in the lawful possession of premises has a
right to protect them or to eject an intruder upon them; and in
the exercise of his right, for that purpose, he may use such force
as may be reasonably necessary. Acting within the limits of a

reasonable use of force to protect himself or his property he is justifiable in law; but if he exceeds the force necessary he becomes a trespasser *ab initio*. Yet the necessity of the force which was resorted to, to repel the "encroachment" of the plaintiff upon the defendants' premises, and the question whether the defendants used more force and violence upon the person of the plaintiff than was necessary for the protection of their property, should have been left to the jury. It was interfering with their constitutional right to determine all matters of fact, for the court to instruct them that the mere use of the weapon to resist the encroachment of the plaintiff gave him the right to recover.

Besides, if the plaintiff was the aggressor, and had actually employed others to destroy what was confessedly the property of the defendant, and was aiding and abetting them in such attempt to destroy it, in the performance of which he received his injuries, these circumstances were proper for the consideration of the jury in mitigation of damages, although they may not have been sufficient to justify the defendants for the use of a deadly weapon; and it was error to lead the jury away from the consideration of these things by instructing them that the mere use of the weapon entitled the plaintiff to their verdict.

Judgment and order reversed, and cause remanded for a new trial.

Ross and McKinstry, JJ. — In view of the testimony on the part of defendants, we agree that the court below erred in giving the third instruction mentioned in the opinion of Mr. Justice McKee, and, therefore, concur in the judgment.