[No. 15110. Department One.— September 1, 1893.]

THE PEOPLE, ETC., EX REL. WILLIAM EADIE, APPEL-
LANT, v. NOYO LUMBER COMPANY, RESPONDENT.

99 456
107 547
99 456
110 295
99 456
140 147
140 152

STATE SCHOOL LANDS—DEFECTIVE APPLICATION—EFFECT OF CURATIVE ACT—
SUBSEQUENT ACT LIMITING EFFECT NOT RETROACTIVE. — Where an application
for the purchase of school lands was made prior to the passage of the Curative
Act of March 24, 1870, any defects therein were cured by such act, and the ap-
plication having been once validated it was not within the power of the legisla-
ture to place other limitations to the title thus conferred, and the provision
in the act of March 27, 1872, limiting the effect of the Curative Act of March 24,
1870, in the matter of school lands, to the amount of three hundred and twenty
acres for any one purchaser, has no application to such a case.

ID. — CONGRESSIONAL RATIFICATION OF STATE INDEMNITY SCHOOL SELECTIONS—
"BOOTH ACT." — The act of Congress approved March 1, 1877 (19 U. S. Stats.,
p. 267), commonly known as the "Booth Act," was a full and complete ratifica-
tion by Congress, according to its terms, of the list of indemnity school selec-
tions which had been, before that time, certified to the state by the United
States as indemnity school selections, no matter how defective or insufficient
such school certificates might originally have been, if the lands included in the
lists were not of the character of any of those mentioned in section 4, and if
they had not been taken up in good faith by a homestead or pre-emption settler
prior to the date of the certificate.

ID. — CONGRESSIONAL GRANT—TITLE WITHIN CURATIVE ACT.—The ratification by
the United States of the listing of indemnity school selections was equivalent
to a grant of those lands to the state as of the date of the listing, and the title
thus ratified was within the Curative Act of March 24, 1870, and was thereby
validated as though the lands had belonged to the state at the time of the pas-
sage of the act.

ID. — ACTION BY STATE TO CANCEL PATENT—FRAUD — LIMITATION — KNOWLEDGE OF
OFFICERS — EFFECT OF CURATIVE ACT. — An action by the state to cancel a patent
for school land on the ground of false and fraudulent statements by the
applicant is governed by subdivision 4 of section 338 of the Code of Civil
Procedure, and is barred if not commenced within three years after the
cause of action accrued, and an averment that the false statement was not
known to the officers of the state is not sufficient to exempt the action
from the provisions of that section; and any defects in the statement, whether
fraudulent or not, having been cured by the act of 1870, it is immaterial
whether or not they were subsequently ascertained by the land officers of the
state.

ID. — IGNORANCE OF FRAUD ON PART OF RELATOR — "AGGRIEVED PARTY."—One on
whose relation an action is brought in the name of the state to cancel a patent
on the ground of fraud, is not the "aggrieved party" within the meaning of sec-
tion 338 of the Code of Civil Procedure, which provides that a cause of action
on the ground of fraud is not to be deemed to have accrued until the discovery
by the aggrieved party of the facts constituting the fraud; and an averment
that the fraud was not known to the relator until within the past two years is
not sufficient to prevent the bar of the statute.

APPEAL from a judgment of the Superior Court of Sonoma
County.

The facts are stated in the opinion of the court.

*Attorney-General W. H. H. Hart, John T. Carey,* and *B. F. Bergen,* for Appellant.

Applications to purchase lands from the state must conform to the statute or they will be regarded as invalid. (*Hildebrand* v. *Stewart,* 41 Cal. 392; *Woods* v. *Sawtelle,* 46 Cal. 391; *Botsford* v. *Howell,* 52 Cal. 158, 159; *McCoy* v. *Byrd,* 65 Cal. 93; *Millidge* v. *Hyde,* 67 Cal. 6, 7; *McKenzie* v. *Brandon,* 71 Cal. 211.) Macpherson's affidavit in his application does not describe the lands he sought to purchase by legal subdivisions or otherwise, and for this reason is invalid and void. (*Hildebrand* v. *Stewart,* 41 Cal. 392, 393; *Cucamonga Fruit Land Co.* v. *Moir,* 83 Cal. 105.) An affidavit not true in point of fact is not such an affidavit as the law requires in applications to purchase lands from the state. (*McKenzie* v. *Brandon,* 71 Cal. 211, 212; *Mosely* v. *Torrence,* 71 Cal. 320, 321.) The lands in dispute did not become the lands of the state until March 1, 1877. The title to them was then vested in the state by the act of Congress commonly known as the "Booth Act," approved March 1, 1877. (*Cucamonga Fruit Land Co.* v. *Moir,* 83 Cal. 105.) The invalid application of Macpherson for the lands in dispute was not cured by the Curative Act of March 24, 1870 (Stats. 1869–70, p. 352), because that act only attempted to cure applications theretofore made to purchase *lands belonging to the state at the date* of the passage of the act. The lands in dispute did not become the lands of the state until March 1, 1877. (*Cucamonga Fruit Land Co.* v. *Moir,* 83 Cal. 106.) Macpherson's application was not cured by the Curative Act of March 24, 1870, because he had applied for and purchased more than three hundred and twenty acres of school lands from the state. (*People* v. *Martz,* 74 Cal. 111, 112; *Rowell* v. *Perkins,* 56 Cal. 227, 228.) This is an action for relief upon the ground of fraud and mistake within the meaning of subdivision 4 of section 338 of the Code of Civil Procedure, and is governed by that section, and therefore the action is not barred by limitation. (Code Civ. Proc., sec. 338; Pomeroy's Equity Jurisprudence, sec. 917; *United States* v. *Minor,* 114 U. S. 238; *People* v. *Blankenship,* 52 Cal. 620.) The state is clearly an aggrieved party, and could maintain this action in its own right by its attorney-general. (*United States*

v. *Minor,* 114 U. S. 240, 241; *People* v. *Stratton,* 25 Cal. 247; *Moore* v. *Robbins,* 96 U. S. 533; *United States* v. *Stone,* 2 Wall. 525.) It is not necessary that the relator should have any interest in the matter in dispute. (Story on Equity Pleadings, sec. 8.) Even if it be conceded that relator Eadie is the aggrieved party, the authority having been given to sue in the name of the people cannot be withdrawn, even though it should be determined that the state has no direct interest. (*People* v. *North S. F. H. Ass'n,* 38 Cal. 564.) The relator is entitled to attack the patent in this action as he was in privity with the paramount source of title when the collateral attack was made. (*Lee* v. *Johnson,* 116 U. S. 49; *Burling* v. *Thompkins,* 77 Cal. 260.)

J. A. *Cooper,* and *Charles E. Wilson,* for Respondent.

The action is barred by sections 315, 318, 319, 338, and 343 of the Code of Civil Procedure. (*People* v. *Blankenship,* 52 Cal. 619; *Duff* v. *Duff,* 71 Cal. 529; *Boyd* v. *Blankman,* 29 Cal. 44; 87 Am. Dec. 146; *Moore* v. *Moore,* 56 Cal. 90; *Raynor* v. *Mintzer,* 72 Cal. 589; *Croghan* v. *Spence,* 71 Cal. 125; *People* v. *Van Ness,* 76 Cal. 124.) The relator should possess a title superior to that of his adversary in order to recover. The relator, and not the state, is the real party in interest. (*Boggs* v. *Merced Min. Co.,* 14 Cal. 364; *People* v. *Stratton,* 25 Cal. 244; *People* v. *North S. F. H. Ass'n,* 38 Cal. 565.) The relator Eadie being the real party in interest must connect himself with the paramount source of title before he can be heard. (*Durfee* v. *Plaisted,* 38 Cal. 83; *Doll* v. *Meador,* 16 Cal. 324; *Smelting Co.* v. *Kemp,* 104 U. S. 647; *Sparks* v. *Pierce,* 115 U. S. 413; *Lee* v. *Johnson,* 116 U. S. 48.) The mere filing or offering to file an application by Eadie in no way connected him with the paramount source of title. (*Urton* v. *Wilson,* 65 Cal. 11.) The alleged defects in Macpherson's application, if they ever existed, were cured, and the application made valid by the Curative Act of March 24, 1870. (Stats. 1869–70, p. 352; Stats. 1871–72, p. 587; Amend. April 1, 1878; Stats. 1878, p. 914; Pol. Code, sec. 3573; *Rowell* v. *Perkins,* 56 Cal. 226; *People* v. *Jackson,* 62 Cal. 554; *Muller* v. *Carey,* 58 Cal. 540; *Oakley* v. *Stuart,* 52 Cal. 535; *Upham*

v. *Hosking*, 62 Cal. 259; *Northern R'y Co.* v. *Jordan*, 87 Cal. 25.)   The "Booth Act" confirmed to the state the title as of the date of the listing, February 15, 1870.   (*Martin* v. *Durand*, 63 Cal. 41; *Durand* v. *Martin*, 120 U. S. 366.)

HARRISON, J. — Action to cancel a patent issued by the state of California, in 1876, to A. W. Macpherson for certain lands in Mendocino County.

It is alleged in the complaint that the lands in question are agricultural lands which were listed to the state February 15, 1870, in lieu of a section 36, that section then supposed to be within the exterior limits of a reservation, but subsequently ascertained to be excluded therefrom; that said selection was confirmed to the state by the provisions of the act of Congress approved March 1, 1877, entitled, "An act relating to indemnity school selections in the state of California"; that Macpherson made application September 23, 1868, to the state surveyor-general to purchase the lands in lieu of said school section, and that on March 20, 1870, his application was approved by the surveyor-general, and that thereupon he paid to the county treasurer of Mendocino County twenty per cent of the purchase-money with the first year's interest on the balance, and received from the register of the said land-office a certificate of purchase thereof; that on the 21st of September, 1876, upon paying the balance of the purchase-money and surrender of said certificate, letters patent were issued to him by the state; that on the 29th of March, 1888, the defendant succeeded to whatever right and interest in the land Macpherson had by virtue of said application, certificate of purchase, and letters patent, but did not enter into possession to the lands until September, 1890.   The complaint further alleges that the application of Macpherson was null and void, for the reason that in his affidavit therefor he failed to describe the lands by legal subdivisions; and was also false and fraudulent for the reason that he stated therein that there were no improvements on said land other than his own, whereas, in fact, the said land was at that time in the actual occupation and possession of one Joseph Hardy, who remained in such occupation and possession until his death in 1874, and whose son succeeded to his interest and con-

tinued in the possession of the land until within two years prior to the commencement of this action (August 6, 1891). The complaint further alleges that on the eleventh day of July, 1891, the relator possessed the requisite qualifications therefor, and on that day made application to the state surveyor-general to purchase the said lands as a portion of the state school lieu lands, but that officer refused to file said application, for the reason that the said patent to Macpherson was outstanding and uncanceled. Plaintiff therefore asks that the letters patent issued to Macpherson be canceled and that the relator be adjudged to have the right to file his application to purchase said lands. To this complaint the defendant demurred, and his demurrer having been sustained, judgment was entered in his favor, and the plaintiff has appealed.

Whatever defects there may have been in the application of Macpherson, they were cured by the act of March 24, 1870. (Stats. 1870, p. 372; *Copp* v. *Harrington*, 47 Cal. 236; *Rooker* v. *Johnston*, 49 Cal. 3.) The provision in the act of March 27, 1872, limiting the effect of that act in the matter of school lands to the amount of three hundred and twenty acres for any one purchaser, has no application to the present case. As Macpherson's application to purchase was made September 23, 1868, prior to the passage of the Curative Act of 1870, after his application had once been validated it was not in the power of the legislature to place other limitations to the title thus conferred upon him. Moreover, the act of 1872 was superseded by section 3573 of the Political Code, which is substantially the same as the act of March 24, 1870. Hence the averment in the complaint, that prior to March 24, 1870, he had purchased from the state more than three hundred and twenty acres of school lands, is immaterial.

By the act of Congress approved March 1, 1877 (19 U. S. Stats., p. 267), commonly known as the "Booth Act," the title to these lands was confirmed to the state. "This statute was a full and complete ratification by Congress, according to its terms, of the list of indemnity school selections which had been before that time certified to the state of California by the United States as indemnity school selections, no matter how defective or insufficient such school certificates might originally have been, if the lands included in the lists were not of the

character of any of those mentioned in section 4, and if they had not been taken up in good faith by a homestead or pre-emption settler prior to the date of the certificate." (*Durand* v. *Martin*, 120 U. S. 372, affirming *Martin* v. *Durand*, 63 Cal. 39.) This ratification by the United States of the listing of the lands was equivalent to a grant of those lands to the state as of the date of the listing, February 15, 1870, and the title thus ratified was within the effect of the Curative Act of March 24, 1870, and was thereby validated as though the lands had belonged to the state at the time of the passage of the act. The expression to the contrary in the opinion of Mr. Justice Thornton in *Cucamonga Fruit Land Co.* v. *Moir*, 83 Cal. 105, did not receive the approval of the court and cannot be regarded as authority.

Section 338 (4) of the Code of Civil Procedure declares that an action for relief on the ground of fraud or mistake must be commenced within three years after the cause of action accrues, and further provides that the cause of action in such case is not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake. In *People* v. *Blankenship*, 52 Cal. 619, this provision was held to apply to an action by the state to cancel a patent for land alleged to have been procured by fraud. The plaintiff herein seeks to take the present case out of this limitation by averring: "That the fraudulent and false statement made by Macpherson was not known by the relator until within the past two years, nor was it discovered by the land-officers or the attorney-general of this state until on or about the eleventh day of July, 1891." The relator is not, however, the "aggrieved party," within the meaning of section 338, and the averment that the "false statement" was not known to the officers is not sufficient to exempt the action from the provisions of the section. The statement itself must have been known to the officers at the time it was received by them from Macpherson, and as any defects in that statement, whether fraudulent or false, were cured by the act of 1870, it is immaterial whether or not they were subsequently ascertained by the land-officers of the state.

The judgment is affirmed.

PATERSON, J., and GAROUTTE, J., concurred.

Hearing in Bank denied.