### Commonwealth v. Emmons, Appellant.

496

Argued November 20, 1944; reargued April 9, 1945.
Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH,
ROSS and ARNOLD, JJ.

*John V. Diggins,* for appellant.

*Joseph E. Pappano,* Assistant District Attorney, with
him *C. William Kraft, Jr.,* District Attorney, for appellee.

OPINION BY ARNOLD, J., July 19, 1945:

The defendant, Mildred E. Emmons, on September
·21, 1943 shot one Edward Gray with a rifle and seriously
injured him. She was indicted in three counts,—assault
and battery with intent to murder, aggravated assault
and battery and simple assault and battery. The jury
found her guilty of aggravated assault and battery.
The court overruled defendant's motion for new trial
and sentenced, and this appeal followed.

The defendant lived in a second floor apartment of
a house in Sacone, Upper Darby, Delaware County, Pa.
The apartment house fronted on a forty foot wide improved street known as Broadway Avenue. On the side
of the house was an unopened street known as Beech·

wood Avenue, which was a cul-de-sac ending at the rear of the apartment house premises, and was used by the defendant as a way to a garage on the premises.

The defendant had purchased under a bailment lease a Chevrolet Sedan automobile, and on September 21, 1943 was in default thereunder in the amount of $115.66, being two monthly installments. The bailment lease gave the bailor the right to repossess upon default. The lease had been assigned by the seller-bailor to a finance company, which determined to repossess. Its representative came to defendant's second floor apartment on September 21, 1943 at about 11:00 o'clock A. M., knocked on the door and also rang the door bell. There was no response, the defendant later claiming she was asleep.

Defendant's automobile was at this time parked on the unopened cul-de-sac street called Beechwood Avenue. With the aid of Gray (an employe of a commercial garage) defendant's automobile was pushed backwards onto Broadway Avenue and parked near the curb, and the hood of the automobile was raised in order to check the serial numbers. Two shots were fired and the left femur bone in the leg of Edward Gray was badly shattered.

Circumstances led the police officers to interview the defendant who stated that she had fired with a .22 rifle, but did not recall how many shots. She said that she believed the men were stealing her automobile, and that she fired at a point near the intersection of the unopened street and Broadway Avenue, and did not aim at or intend to shoot anyone. There was, however, evidence on the part of the Commonwealth upon which the jury may well have found that the defendant intentionally shot Gray.

The various assignments of error raise but one question, viz:—

Where in good faith and upon reasonable grounds, one believes her automobile is being stolen from where it was parked in broad daylight on an unopened street

(or private way),—may one shoot the person believed to be the thief in order to prevent the supposed larceny? The learned court below answered this question in the negative, and so do we.

While it has been asserted that some rule of law exists which justifies killing in order to prevent the commission of a felony,—we are convinced that no such broadly stated rule exists. There is no right to kill in order to prevent *any* felony. To justify the killing it must be to prevent the commission of a felony which is either an atrocious crime or one attempted to be committed by force (or surprise) such as murder, arson, burglary, rape, kidnapping, sodomy or the like.

While we are unable to discover any Pennsylvania cases on the subject, all writers seem to be in accord, both where the death of the supposed felon results, and where some form of assault and battery is committed.

40 C. J. S., Homicide, Section 101, states the rule: "The taking of human life is justifiable when done for the prevention of any *atrocious* crime attempted to be committed with force ...... A homicide is justifiable when committed by necessity and in good faith in order to prevent a felony attempted by *force* or surprise, such as murder, robbery, burglary, arson, rape, sodomy and the like ...... Killing to prevent a felony is not justifiable if the felony is a secret one, or *unaccompanied by force,* or if it *does not involve the security of the person or home* ......" (Italics supplied).

26 Am. Jur., Homicide, Section 172, states the rule: "In general, it may be said that the law countenances the taking of human life in connection with the defense of property *only where an element of danger to the person of the slayer* is present ......" (Italics supplied). "The mere fact that such (personal) property is being wrongfully taken ...... does not justify a homicide committed in an attempt to prevent the taking or detention."

1 Bishop Criminal Law, 9th Ed., Section 876, states

the rule: "A felonious homicide is committed by one who inflicts death in opposing an unlawful endeavor to carry away his property. There is here the right to resist, but not to the taking of life."

The rule is the same where the supposed felon does not die and the indictment is for some form of assault and battery: 6 C. J. S., Assault and Battery, Section 94, "It is only in extreme cases that a person is entitled to inflict great bodily harm or endanger human life in protecting (personal) property, although *where the defense of person or of a dwelling, is involved, it would seem that the use of a deadly weapon may sometimes be justified.*" (Italics supplied).

Likewise in 4 Am. Jur., Assault and Battery, Section 63: "While a man may use as much force as is necessary in the defense of his property, it is generally held *that in the absence of the use of force on the part of the intruder,* he is not justified in inflicting great bodily harm or endangering life." (Italics supplied). "The preservation of human life and limb from grievous harm is of more importance to society than the protection of property."

There are numerous cases from other jurisdictions to the same effect: *State v. Terrell,* (Utah) 186 Pac. 108; *Russell v. State,* (Alabama) 122 So. 683, 685; *Chapman v. Commonwealth,* (Ky.) 15 S. W. 50; *Commonwealth v. Beverly,* (Ky.) 34 S. W. 2d 941. See also Restatement of the Law of Torts, Section 143 (2) page 334. Those interested will find careful annotations of the rule with the various distinctions in 25 A. L. R. 508; 32 A. L. R. 1541; and 34 A. L. R. 1488.

In the present case the defendant was not defending her person, or her home or "castle". There was no felony by force or any atrocious crime to be prevented. There was no danger to her or her habitation. There was no force by an intruder for her to repel. There was no justification in law for her infliction of grievous bodily harm.

The assignments of error are overruled, the judgment of the court below is affirmed, and defendant is directed to appear in the court below at such time as she may be there called, and that she be by that court committed until she has complied with her sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.

RHODES, DITHRICH and ROSS, JJ. dissent.