[Crim. No. 17136. In Bank. Sept. 16, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
DON LOUIS CEBALLOS, Defendant and Appellant.

## COUNSEL

Harold J. Truett, Public Defender, and Buford L. Toney, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Derald E. Granberg and Clifford K. Thompson, Jr., for Plaintiff and Respondent.

## OPINION

**BURKE, J.**—Don Ceballos was found guilty by a jury of assault with a deadly weapon (Pen. Code, § 245). Imposition of sentence was suspended and he was placed on probation. He appeals from the judgment, contending primarily that his conduct was not unlawful because the alleged victim was attempting to commit burglary when hit by a trap gun mounted in the garage of defendant's dwelling and that the court erred in instructing the jury. We have concluded that the former argument lacks merit, that the court did not commit prejudicial error in instructing the jury, and that the judgment should be affirmed.

Defendant lived alone in a home in San Anselmo. The regular living quarters were above the garage, but defendant sometimes slept in the garage and had about $2,500 worth of property there.

In March 1970 some tools were stolen from defendant's home. On May 12, 1970, he noticed the lock on his garage doors was bent and pry marks were on one of the doors. The next day he mounted a loaded .22 caliber pistol in the garage. The pistol was aimed at the center of the garage doors

and was connected by a wire to one of the doors so that the pistol would discharge if the door was opened several inches.

The damage to defendant's lock had been done by a 16-year-old boy named Stephen and a 15-year-old boy named Robert. On the afternoon of May 15, 1970, the boys returned to defendant's house while he was away. Neither boy was armed with a gun or knife. After looking in the windows and seeing no one, Stephen succeeded in removing the lock on the garage doors with a crowbar, and, as he pulled the door outward, he was hit in the face with a bullet from the pistol.

Stephen testified: He intended to go into the garage "[f]or musical equipment" because he had a debt to pay to a friend. His "way of paying that debt would be to take [defendant's] property and sell it" and use the proceeds to pay the debt. He "wasn't going to do it [i.e., steal] for sure, necessarily." He was there "to look around," and "getting in, I don't know if I would have actually stolen."

Defendant, testifying in his own behalf, admitted having set up the trap gun. He stated that after noticing the pry marks on his garage door on May 12, he felt he should "set up some kind of a trap, something to keep the burglar out of my home." When asked why he was trying to keep the burglar out, he replied, ". . . Because somebody was trying to steal my property . . . and I don't want to come home some night and have the thief in there . . . usually a thief is pretty desperate . . . and . . . they just pick up a weapon . . . if they don't have one . . . and do the best they can."

When asked by the police shortly after the shooting why he assembled the trap gun, defendant stated that "he didn't have much and he wanted to protect what he did have."

As heretofore appears, the jury found defendant guilty of assault with a deadly weapon. (Pen. Code, § 245.) An assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Pen. Code, § 240.)

Defendant contends that had he been present he would have been justified in shooting Stephen since Stephen was attempting to commit burglary (Pen. Code, § 459), that under cases such as *United States* v. *Gilliam*, 25 F.Cas. 1319 [1 Hayw. & H. 109], defendant had a right to do indirectly what he could have done directly, and that therefore any attempt by him to commit a violent injury upon Stephen was not "unlawful" and hence not an assault. The People argue that the rule in *Gilliam* is unsound, that as a matter of law a trap gun constitutes excessive force, and that in any

event the circumstances were not in fact such as to warrant the use of deadly force.

The issue of criminal liability under statutes such as Penal Code section 245 where the instrument employed is a trap gun or other deadly mechanical device appears to be one of first impression in this state,[1] but in other jurisdictions courts have considered the question of criminal and civil liability for death or injuries inflicted by such a device.

At common law in England it was held that a trespasser, having knowledge that there are spring guns in a wood, cannot maintain an action for an injury received in consequence of his accidentally stepping on the wire of such gun. (*Ilott* v. *Wilkes* (1820) 3 Barn. & Ald. 304.) That case aroused such a protest in England that it was abrogated seven years later by a statute, which made it a misdemeanor to set spring guns with intent to inflict grievous bodily injury but excluded from its operation a spring gun set between sunset and sunrise in a dwelling house for the protection thereof. (7 & 8 Geo. IV, ch. 18; see Bohlen & Burns, *The Privilege to Protect Property by Dangerous Barriers and Mechanical Devices*, 35 Yale L.J. 525, 538, 539.)

In the United States, courts have concluded that a person may be held criminally liable under statutes proscribing homicides and shooting with intent to injure, or civilly liable, if he sets upon his premises a deadly mechanical device and that device kills or injures another. (*Katko* v. *Briney* (Iowa) 183 N.W.2d 657, 660 [47 A.L.R.3d 624]; *State* v. *Plumlee*, 177 La. 687 [149 So. 425, 429]; *State* v. *Beckham*, 306 Mo. 566 [267 S.W. 817, 819, 37 A.L.R. 1094] [disapproved on another issue in *State* v. *Tatum* (Mo.) 414 S.W.2d 566, 568]; *State* v. *Childers*, 133 Ohio St. 508 [11 Ohio Ops. 191, 14 N.E.2d 767, 769]; *Marquis* v. *Benfer* (Tex.Civ.App.) 298 S.W.2d 601, 603; *Pierce* v. *Commonwealth*, 135 Va. 635 [115 S.E. 686, 687 et seq.]) However, an exception to the rule that there may be criminal and civil liability for death or injuries caused by such a device has been recognized where the intrusion is, in fact, such that the person, were he present, would be justified in taking the life or inflicting the bodily harm with his own hands. (See *United States* v. *Gilliam, supra*, 25 F.Cas. 1319, 1320-1321; *Scheuermann* v. *Scharfen-*

---

[1]The parties have cited no California statute specifically dealing with trap guns, except Fish and Game Code section 2007, which provides: "It is unlawful to set, cause to be set, or placed any trap gun. [¶] A 'trap gun' is a firearm loaded with other than blank cartridges and connected with a string or other contrivance contact with which will cause the firearm to be discharged." Even if the Legislature in enacting this section intended merely to regulate the taking of wild life, defendant's attempt to commit a violent injury upon Stephen, as we shall see, was unlawful.

berg, 163 Ala. 337 [50 So. 335]; *Katko* v. *Briney, supra*; *Gray* v. *Combs* (Ky.) 23 Am. Dec. 431; *State* v. *Plumlee, supra*; *State* v. *Beckham, supra*; *State* v. *Childers, supra*, p. 770; *Marquis* v. *Benfer, supra*; see Defense of Property—Spring Guns or Traps, 47 A.L.R.3d 646, 662; 6 Am.Jur.2d, Assault and Battery, § 89, p. 78; 40 C.J.S., Homicide, § 111, pp. 978-979; Perkins on Criminal Law (2d ed.) p. 1030; Rest. 2d Torts, § 85; Prosser on Torts (4th ed.) p. 116; but see Posner, *Killing or Wounding to Protect a Property Interest* (1971) 14 J. Law & Econ. 201, 214-215.) The phrase "were he present" does not hypothesize the actual presence of the person (see Rest. 2d Torts, § 85, coms. (a), (c) & (d)), but is used in setting forth in an indirect manner the principle that a person may do indirectly that which he is privileged to do directly.

Allowing persons, at their own risk, to employ deadly mechanical devices imperils the lives of children, firemen and policemen acting within the scope of their employment, and others. Where the actor is present, there is always the possibility he will realize that deadly force is not necessary, but deadly mechanical devices are without mercy or discretion. Such devices "are silent instrumentalities of death. They deal death and destruction to the innocent as well as the criminal intruder without the slightest warning. The taking of human life [or infliction of great bodily injury] by such means is brutally savage and inhuman." (See *State* v. *Plumlee, supra*, 149 So. 425, 430.)

It seems clear that the use of such devices should not be encouraged. ▬ Moreover, whatever may be thought in torts, the foregoing rule setting forth an exception to liability for death or injuries inflicted by such devices "is inappropriate in penal law for it is obvious that it does not prescribe a workable standard of conduct; liability depends upon fortuitous results." (See Model Penal Code (Tent. Draft No. 8), § 3.06, com. 15.) We therefore decline to adopt that rule in criminal cases.

Furthermore, even if that rule were applied here, as we shall see, defendant was not justified in shooting Stephen. Penal Code section 197 provides: "Homicide is . . . justifiable . . . 1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or, 2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony . . . ." (See also Pen. Code, § 198.) **(2)** Since a homicide is justifiable under the circumstances specified in section 197, a fortiori an attempt to commit a violent injury upon another under those circumstances is justifiable.

▬ By its terms subdivision 1 of Penal Code section 197 appears to

permit killing to prevent any "felony," but in view of the large number of felonies today and the inclusion of many that do not involve a danger of serious bodily harm, a literal reading of the section is undesirable. (See 1 Witkin, Cal. Crimes (1963) p. 159; *Justification for the Use of Force in Criminal Law,* 13 Stan.L.Rev. 566, 578-579.) *People* v. *Jones,* 191 Cal. App.2d 478, 481 [12 Cal.Rptr. 777], in rejecting the defendant's theory that her husband was about to commit the felony of beating her (Pen. Code, § 273d) and that therefore her killing him to prevent him from doing so was justifiable, stated that Penal Code section 197 "does no more than codify the common law and should be read in the light of it." *Jones* read into section 197, subdivision 1, the limitation that the felony be "'some atrocious crime attempted to be committed by force.'" *Jones* (at p. 482) further stated, "The punishment provided by a statute is not necessarily an adequate test as to whether life may be taken for in some situations it is too artificial and unrealistic. We must look further into the character of the crime, and the manner of its perpetration (see *Storey* v. *State* [71 Ala. 329]). *When these do not reasonably create a fear of great bodily harm,* as they could not if defendant apprehended only a misdemeanor assault, *there is no cause for the exaction of a human life.*" (Italics added; see also Harper and James, The Law of Torts (1956) pp. 1441-1442, fn. 38; but see 1 Bishop's Criminal Law (9th ed.) p. 608.)

■ *Jones* involved subdivision 1 of Penal Code section 197, but subdivision 2 of that section is likewise so limited. The term "violence or surprise" in subdivision 2 is found in common law authorities (see *Flynn* v. *Commonwealth,* 204 Ky. 572 [264 S.W. 1111, 1112]; 9 So.Cal.L.Rev. 375, 384), and, whatever may have been the very early common law (see *Storey* v. *State, supra,* 71 Ala. 329, 340; 35 Yale L.J. 525, 542), the rule developed at common law that killing or use of deadly force to prevent a felony was justified only if the offense was a forcible and atrocious crime. (See *Storey* v. *State, supra;* 2 Cooley's Blackstone, p. 1349; Perkins on Criminal Law, *supra,* pp. 989-993; 1 Hale, Pleas of the Crown (1847) p. 487.) "Surprise" means an unexpected attack—which includes force and violence (see Perkins, *supra,* p. 1026, fn. 3), and the word thus appears redundant.

■ Examples of forcible and atrocious crimes are murder, mayhem, rape and robbery. (See *Storey* v. *State, supra,* 71 Ala. 329, 340; 3 Greenleaf on Evidence (1899) p. 122.) In such crimes "from their atrocity and violence human life [or personal safety from great harm] either is, or is presumed to be, in peril" (see *United States* v. *Gilliam, supra,* 25 F.Cas. 1319, 1320; *State* v. *Nyland,* 47 Wn.2d 240 [287 P.2d 345, 347]; *State*

v. *Marfaudille,* 48 Wash. 117 [92 P. 939, 941]; Perkins on Criminal Law, *supra,* p. 991).

Burglary has been included in the list of such crimes. (See, e.g., *United States* v. *Gilliam, supra,* 25 F.Cas. 1319; *Scheuermann* v. *Scharfenberg, supra,* 50 So. 335, 337; *State* v. *Moore,* 31 Conn. 479, 483; *Flynn* v. *Commonwealth, supra,* 264 S.W. 1111, 1112; *State* v. *Marfaudille, supra,* 92 P. 939, 941; Perkins on Criminal Law, *supra,* pp. 991-992; Clark & Marshall on Crimes (6th ed.) pp. 414, 416.) However, in view of the wide scope of burglary under Penal Code section 459, as compared with the common law definition of that offense, in our opinion it cannot be said that under all circumstances burglary under section 459 constitutes a forcible and atrocious crime.[2]

■ Where the character and manner of the burglary do not reasonably create a fear of great bodily harm, there is no cause for exaction of human life (*State* v. *McIntyre,* 106 Ariz. 439 [477 P.2d 529, 534-535]; cf. *People* v. *Jones, supra,* 191 Cal.App.2d 478, 482), or for the use of deadly force (see generally 13 Stan.L.Rev. 566, 577). The character and manner of the burglary could not reasonably create such a fear unless the burglary threatened, or was reasonably believed to threaten, death or serious bodily harm.

■ In the instant case the asserted burglary did not threaten death or serious bodily harm, since no one but Stephen and Robert was then on the premises. A defendant is not protected from liability merely by the fact that the intruder's conduct is such as would justify the defendant, were he present, in believing that the intrusion threatened death or serious bodily injury. (See *State* v. *Green,* 118 S.C. 279 [110 S.E. 145, 147-148, 19 A.L.R. 1431]; Rest. 2d Torts, § 85, com. d;[3] 35 Yale L.J. 525, 544-545.)

---

[2]At common law burglary was the breaking and entering of a mansion house in the night with the intent to commit a felony. (*People* v. *Barry,* 94 Cal. 481, 482 [29 P. 1026]; see 1 Witkin, Cal. Crimes (1963) p. 414; 1 Cooley's Blackstone, pp. 223-228; comment, 25 So.Cal.L.Rev. 75.) Burglary under Penal Code section 459 differs from common law burglary in that the entry may be in the daytime and of numerous places other than a mansion house (see 1 Witkin, *supra,* pp. 416-418), and breaking is not required (see *People* v. *Allison,* 200 Cal. 404, 408 [253 P. 318].) For example, under section 459 a person who enters a store with the intent of committing theft is guilty of burglary. (See *People* v. *Corral,* 60 Cal.App.2d 66 [140 P.2d 172].) It would seem absurd to hold that a store detective could kill that person if necessary to prevent him from committing that offense. (See 13 Stan.L.Rev. 566, 579.)

[3]Restatement Second of Torts, section 85, comment d, states. "The user of a device likely to cause death or serious bodily harm is not protected from liability merely by the fact that the intruder's conduct is such as would justify the actor, were he pres-

There is ordinarily the possibility that the defendant, were he present, would realize the true state of affairs and recognize the intruder as one whom he would not be justified in killing or wounding. (See 35 Yale L.J. 525, 545.)

We thus conclude that defendant was not justified under Penal Code section 197, subdivisions 1 or 2, in shooting Stephen to prevent him from committing burglary. Our conclusion is in accord with dictum indicating that there may be no privilege to use a deadly mechanical device to prevent a burglary of a dwelling house in which no one is present. (See *State* v. *Green, supra,* 110 S.E. 145, 147; *State* v. *Barr,* 11 Wash. 481 [39 P. 1080, 1082] [criticized in *State* v. *Marfaudille, supra,* 92 P. 939, 940-941, but mentioned with approval in 35 Yale L.J. 525, 540-541]; *contra,* e.g., *State* v. *Beckham, supra,* 267 S.W. 817, 818-820 [disapproved on another issue in *State* v. *Tatum, supra,* 414 S.W.2d 566, 568]; *Scheuermann* v. *Scharfenberg, supra,* 50 So. 335, 337; *State* v. *Moore, supra,* 31 Conn. 479, 483; see also Prosser on Torts, *supra,* p. 116, wherein the rule in cases such as *Scheuermann* v. *Scharfenberg, supra,* is set forth.)

In support of his position that had he been present he would have been justified in shooting Stephen, defendant cites *Nakashima* v. *Takase,* 8 Cal. App.2d 35 [46 P.2d 1,020], a case in which the decedent's mother was seeking damages. The defendant, a cafe proprietor, suspected a burglary might be committed, returned to the cafe after dark, and hid inside. The decedent and a companion broke into the cafe intending to commit larceny, and after they entered the defendant, who was secreted in a position where he could not be seen or heard, shot the decedent without warning. *Nakashima,* in reversing the judgment in the plaintiff's favor, concluded that the defendant's act was a justifiable homicide under Penal Code section 197, subdivision 2. That case manifestly differs on its facts from the present one in that, among other things, here no one except the asserted would-be burglar and his companion was on the premises when the gun was fired.[4]

---

ent, in believing that his intrusion is so dangerous or criminal as to confer upon the actor the privilege of killing or maiming him to prevent it. The actor is relieved from liability only if the intruder is, in fact, one whose intrusion involves danger of life and limb of the occupants of the dwelling place or is for the purpose of committing certain serious crimes, as to which see §§ 142(2) and 143(2) . . . ." Section 142, subdivision (2) concerns a riot "which threatens death or serious bodily harm." As hereinafter appears, section 143, subdivision (2), contains a broader rule with respect to the type crime for the prevention of which deadly force is privileged than the rule followed herein.

[4]*Nakashima* cited *Brooks* v. *Sessagesimo,* 139 Cal.App. 679 [34 P.2d 766], another tort action case. In *Brooks* the defendant, without warning, shot and killed a man who was attempting to burglarize the defendant's chickencoop at night. *Brooks,* in affirming the judgment in the defendant's favor, concluded that the homicide was

*People* v. *Silver,* 16 Cal.2d 714 [108 P.2d 4], does not aid defendant. In *Silver* the defendant, a watchman assigned to guard a mine, killed a boy, who with two other boys after dark trespassed on the guarded property for the purpose of stealing gasoline. The sole defense was justification under the provisions relating to felony prevention (Pen. Code, § 197, subds. 1 & 2). It was the defendant's theory that the deceased was guilty of burglary. *Silver,* in reversing the manslaughter conviction, held that the court erred in instructing the jury regarding defendant's defense in that an instruction defining a "mine" in connection with the definition of burglary was too restricted. *Silver* also held that it was error to give an instruction on self-defense since defendant did not raise that defense. *Silver* has been criticized on the ground that it improperly extended the justification of felony prevention to a felony not involving physical danger to any person. (See 13 Stan. L.Rev. 566, 578-579.) ▮ However, *Silver* does not discuss the issue of the nature of the felony coming within that justification, and cases, of course, are not authority for propositions not there considered. (*People* v. *Banks,* 53 Cal.2d 370, 389 [1 Cal.Rptr. 669, 348 P.2d 102]; *In re Tartar,* 52 Cal.2d 250, 258 [339 P.2d 553].)

Several cases contain broad language relating to justification for killing where a person acts in defense of his habitation or property to prevent "a felony" (see, e.g., *People* v. *Hecker,* 109 Cal. 451, 461-462 [42 P. 307]; *People* v. *Flanagan,* 60 Cal. 2, 3-4; *People* v. *Hubbard,* 64 Cal.App. 27, 35 [220 P. 315]), but in those cases also it does not appear that any issue was raised or decided as to the nature of the felony coming within that doctrine.

▮ We recognize that our position regarding justification for killing under Penal Code section 197, subdivisions 1 and 2, differs from the position of section 143, subdivision (2), of the Restatement Second of Torts, regarding the use of deadly force to prevent a "felony . . . of a type . . . involving the breaking and entry of a dwelling place"[5] (see also Perkins

---

justifiable. (Pen. Code, §§ 197 & 198.) *Brooks* stated, inter alia, that there was evidence that the defendant was in fear of his life, that under the circumstances it could not be said that the fear was unreasonable, and that, although no gun was found on the decedent an open pocket knife was in his pocket and a burglar is apt to be armed with a gun. That case also manifestly differs from the present one in that here no one but the asserted would-be burglar and his companion was on the premises when the gun was fired.

[5]Section 143, subdivision (2), of Restatement Second of Torts, reads, "The use of force . . . intended or likely to cause death or serious bodily harm is privileged if the actor reasonably believes that the commission or consummation of the felony cannot otherwise be prevented and the felony for the prevention of which the actor is intervening is of a type threatening death or serious bodily harm or *involving the breaking and entry of a dwelling place.*" (Italics added.)

The comment to that subsection states: "The Statement in this Subsection permits

on Criminal Law, *supra,* p. 1030, which is in accord with the foregoing section of the Rest. 2d Torts) but in view of the supreme value of human life (see *People* v. *Jones, supra,* 191 Cal.App.2d 478, 482), we do not believe bodily force can be justified to prevent all felonies of the foregoing type, including ones in which no person is, or is reasonably believed to be, on the premises except the would-be burglar.

 Defendant also argues that had he been present he would have been justified in shooting Stephen under subdivision 4 of Penal Code section 197, which provides, "Homicide is . . . justifiable . . . 4. When necessarily committed in *attempting,* by lawful ways and means, *to apprehend* any person for any felony committed . . . ." (Italics added.) The argument cannot be upheld. The words "attempting . . . to apprehend" contain the idea of acting for the purpose of apprehending. An attempt to commit a crime includes, inter alia, the specific intent to commit a particular crime (*People* v. *Welch,* 8 Cal.3d 106,. 118 [104 Cal.Rptr. 217, 501 P.2d 225]), and "In statutes and in cases other than criminal prosecutions an 'attempt' ordinarily means an intent combined with an act falling short of the thing intended." (Black's Law Dictionary (4th ed.) p. 162.) Here no showing was made that defendant's intent in shooting was to apprehend a felon. Rather it appears from his testimony and extrajudicial statement heretofore recited that his intent was to prevent a burglary, to protect his property, and to avoid the possibility that a thief might get into defendant's house and injure him upon his return.

*People* v. *Lillard,* 18 Cal.App. 343, 345 [123 P. 221], cited by defendant, differs from the instant case. There the court, in concluding that the homicide was justifiable under subdivision 4 of section 197, stated, inter alia, that the defendant had pursued the deceased for the purpose of capturing him and that "no fact even suggesting in the most remote degree any motive on the part of defendant, other than a lawful one of apprehending a felon, is to be found in the record." Here, however, as we have seen, no showing was made that defendant's intent was to apprehend a felon and instead he claimed other motives for the shooting.

Defendant does not, and could not properly, contend that the intrusion was, in fact, such that were he present, he would be justified under Penal Code sections 692 and 693 in using deadly force. By its terms section 692 authorizes merely "lawful" resistance to an offense by the party about to be injured. The circumstances in which resistance by such party

the use of means intended or likely to cause death or serious bodily harm for the purpose of preventing such crimes as murder, voluntary manslaughter, mayhem, robbery, common law rape, kidnapping, and *burglary."* (Italics added.)

is lawful are set forth in Penal Code section 693, which provides, "Resistance sufficient to prevent the offense may be made by the party about to be injured: 1. To prevent an offense against his person, or his family, or some member thereof. 2. To prevent an illegal attempt by force to take or injure property in his lawful possession." Subdivision 1 of section 693 manifestly does not apply, since in the instant case there was no attempt to commit "an offense against [defendant's] person, or his family, or some member thereof." Nor does subdivision 2 of that section apply. ▮ Section 693, like Penal Code section 197, should be read in the light of the common law, and, as heretofore stated, the rule developed at common law that deadly force to prevent a felony was justified only if the offense was a forcible and atrocious crime. Here the asserted attempted larceny, like the asserted attempted burglary, was not such a crime because the offense did not threaten death or serious bodily harm.

Defendant also does not, and could not properly, contend that the intrusion was in fact such that, were he present, he would be justified under Civil Code section 50 in using deadly force. ▮ That section provides, "Any necessary force may be used to protect from wrongful injury the person or property of oneself . . . ." This section also should be read in the light of the common law, and at common law in general deadly force could not be used solely for the protection of property. (See Model Penal Code, *supra,* § 3.06, com. 8; Perkins on Criminal Law, *supra,* p. 1026, fn. 6; 13 Stan.L.Rev. 566, 575-576.) " 'The preservation of human life and limb from grievous harm is of more importance to society than the protection of property.' " (*Commonwealth* v. *Emmons,* 157 Pa.Super. 495 [43 A.2d 568, 569], quoting from 4 Am.Jur., Assault and Battery, § 63; accord, *Simpson* v. *State,* 59 Ala. 1, 14; see also Prosser on Torts, *supra,* p. 115; 35 Yale L.J. 525, 528.) Thus defendant was not warranted under Civil Code section 50 in using deadly force to protect his personal property.

The opinion of Justice McKee in *Dinan* v. *Fitz Gibbon,* 63 Cal. 387, contains language indicating that deadly force, if necessary, may be used to protect property against a trespasser. ▮ However, the other justices concurred in the judgment on the ground of an error in instructions and did not give their approval to that language. Thus Justice McKee's language has no controlling weight. (See *Mix* v. *Ingersoll Candy Co.,* 6 Cal.2d 674, 679 [59 P.2d 144]; *People* v. *Noyo Lumber Co.,* 99 Cal. 456, 461 [34 P. 96].)

At common law an exception to the foregoing principle that deadly force could not be used solely for the protection of property was recognized where the property was a dwelling house in some circumstances. (See *Simp-*

*son* v. *State, supra,* 59 Ala. 1, 14; Perkins on Criminal Law, *supra,* pp. 1022-1025; Model Penal Code, *supra,* § 3.06, com. 8, pp. 38-41.) "According to the older interpretation of the common law, even extreme force may be used to prevent dispossession [of the dwelling house]." (See Model Penal Code, *supra,* com. 8.) Also at common law if another attempted to burn a dwelling the owner was privileged to use deadly force if this seemed necessary to defend his "castle" against the threatened harm. (See Perkins on Criminal Law, *supra,* p. 1023; 1 Hale, Pleas of the Crown, *supra,* p. 485.) Further, deadly force was privileged if it was, or reasonably seemed, necessary to protect the dwelling against a burglar. (See Perkins on Criminal Law, *supra,* p. 1023.)

Here we are not concerned with dispossession or burning of a dwelling, and, as heretofore concluded, the asserted burglary in this case was not of such a character as to warrant the use of deadly force.

■ *People* v. *Corlett,* 67 Cal.App.2d 33, 50-53 [153 P.2d 595, 964], contains broad language indicating that an assault with a deadly weapon is justifiable when in necessary defense of habitation, but there the defendant claimed that he acted in self defense, and the language of the court, of course, must be read in the light of the facts before it. (*McDowell & Craig* v. *City of Santa Fe Springs,* 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344]; *In re Collins,* 151 Cal. 340, 345 [90 P. 827, 91 P. 397].)

We conclude that as a matter of law the exception to the rule of liability for injuries inflicted by a deadly mechanical device does not apply under the circumstances here appearing.

■ Defendant also contends that the court erred in giving certain instructions regarding his defense of justification and in failing to give an instruction he requested concerning that defense. Since, as heretofore concluded, as a matter of law that defense cannot be sustained, defendant was not prejudiced by the alleged errors. (Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

■ Defendant further argues that he was committed without probable cause because no showing was made at the preliminary hearing that he set up the trap gun or was the sole occupant of the house. However, since the preliminary hearing transcript was not made part of the record on appeal, on the present record it is impossible to decide the question. Furthermore, it is undisputed that defendant did not make a Penal Code section 995

motion based on the foregoing ground,[6] and he is therefore precluded from making the objection at this time. (Pen. Code, §§ 995 & 996; *People* v. *Johnson*, 164 Cal.App.2d 470, 478-479 [330 P.2d 894].)

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.

---

[6]Defendant made a section 995 motion, but it was on a different ground from the above.