510 So.2d 670 (1987)
STATE of Louisiana
v.
Jeffrey H. BRITT.
No. KA 86 1294.
Court of Appeal of Louisiana, First Circuit.
April 20, 1987.
*671 Bryan Bush, Dist. Atty. by Don Wall, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Robert L. Kleinpeter, Baton Rouge, for defendant-appellant.
Before LOTTINGER, SHORTESS and CARTER, JJ.
LOTTINGER, Judge.
Defendant, Jeffrey H. "Jack" Britt, was indicted by the East Baton Rouge Parish grand jury for the second degree murder of Bradley Cavell. Defendant pleaded not guilty and waived his right to a jury. After a bench trial, he was convicted of manslaughter; and, after two psychiatric examinations, he was sentenced to serve seven years at hard labor. He appealed, urging three assignments of error, as follows:
1. The trial court erred by finding defendant guilty of manslaughter when the state failed to prove all of the elements of the crime beyond a reasonable doubt.
2. The court erred in denying defendant's motion for a new trial.
3. The sentence is excessive and inappropriate; and the trial judge failed to comply with the mandatory sentencing criteria.

FACTS
Defendant was charged with the shooting death of his neighbor, Bradley Cavell. The victim was killed by a .44 caliber revolver which was part of a trap set by *672 defendant to prevent forcible entry to his home from the back door. The "booby-trap," installed by defendant, was set to discharge if the door was opened a distance of two to four inches. The victim's partially mummified corpse was found on the steps leading from an enclosed porch to the rear door. Due to the advanced decomposition of the body, the actual date of death could not be determined, but it was presumed to be June, 1984. The body remained on defendant's porch and was not discovered until April, 1985.
The victim's corpse was found by two neighborhood boys who were looking for a friend whom they had seen earlier mowing defendant's front yard. After spotting what appeared to be human feet on the porch, the boys climbed through a hole in the enclosure and discovered the body. They notified an adult neighbor, who called the police after confirming the boys' story. This neighbor provided defendant's name as the homeowner; thereafter, defendant was arrested at work.
Shortly after his arrest, Britt waived the presence of an attorney and provided a statement which was videotaped. In this statement, defendant admitted that he was aware of the body on his porch. He claimed, however, that he did not know the victim was there until several days after he noticed the gun had fired. Britt explained that he had inspected the premises' exterior but had not seen any signs of disturbance. While Britt confirmed that he had noticed an odor, he attributed it to the possibility of dead animals underneath his house. He first became aware of the body after noticing a large concentration of flies on his porch. Defendant admitted that he should have called the police but did not because he believed someone else had returned to the scene and had tampered with the body.
When the trap was dismantled by the police, it was determined that the gun had been reloaded and was capable of firing again. Britt explained that he reloaded the gun as soon as he noticed it had discharged. Defendant claimed, in fact, that he had been relieved to see that the gun had fired and had not, apparently, struck anyone. Police testimony confirmed that there was no bullet hole in the outside screen door, presumably because the door was open when the shot was fired.

ASSIGNMENTS OF ERROR ONE AND TWO
By these assignments of error, defendant submits the evidence does not support the verdict of manslaughter. By assignment of error number one, defendant submits the court erred in finding defendant guilty when the state failed to prove all of the essential elements of the crime beyond a reasonable doubt. In assignment of error number two, defendant submits the trial court erred by denying his motion for a new trial, based on the allegation that the verdict is contrary to the law and evidence.
The proper procedural vehicle for raising the issue of the sufficiency of the evidence is by a motion for a post-verdict judgment of acquittal. La.Code Crim.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). A reviewing court, despite defendant's failure to proceed properly, must consider the evidence, upon assignment of error, to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), now codified in La.Code Crim.P. art. 821. The standard set forth in article 821 is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Defendant argues that the evidence is not sufficient to support the verdict of manslaughter because the state failed to negate the affirmative defense of justification. Citing State v. Plumlee, 177 La. 687, 149 So. 425 (1933), and La.R.S. 14:20(4), defendant argues that the killing by a mechanical device was justifiable because Britt himself would have been justified in shooting the victim under the same circumstances.
La.R.S. 14:20(4) provides in pertinent part as follows:
*673 A homicide is justifiable:
* * * * * *
(4) When committed by a person lawfully inside a dwelling against a person who is attempting to make an unlawful entry into the dwelling or who has made an unlawful entry into the dwelling and the person committing the homicide reasonably believes that the use of deadly force is necessary to prevent the entry or to compel the intruder to leave the premises. The homicide shall be justifiable even though the person committing the homicide does not retreat from the encounter.
In the videotaped statement played to the court, defendant specifically stated that he had not heard the gun fire while he was home. In his trial testimony, defendant qualified his statement by asserting that he had never heard the gun discharge while he was awake. However, on two occasions, he had been awakened by loud noises that had caused him to check the doors but not the booby trap. Nevertheless, despite defendant's admission that he was likely not at home at the time the gun was fired, he claims the shooting was justified because, under State v. Plumlee, the issue is not whether or not he was at home but, rather, whether or not he would have been justified in shooting the intruder if he had been home.
In Plumlee, the only reported case in this state involving a trap gun, the Louisiana Supreme Court affirmed the conviction of a farmer who set a spring gun in his hen yard to repel chicken thieves. Plumlee admitted he intended to kill anyone who intruded, but claimed he was justified to kill in defense of his property. He, too, was indicted for murder and convicted of manslaughter. The court therein noted that the defendant was a mile away at the time the gun fired; that he, in fact, left after he set the trap and no member of his family was on the premises (to be endangered by either the trap or the thief). The court then stated that the pertinent question is whether or not defendant, if he had been personally present, would have been justified or his actions excusable for slaying the deceased man under the circumstances. 149 So. at 429. The court considered the value of the property guarded by defendant and found that he would not have been justified because the thief, at best, was guilty only of petty larceny since the value of the property was inconsequential.
Defendant argues the shooting of the victim was justified because he was authorized to use deadly force if present, by La.R.S. 14:20(4) and, under Plumlee, he was legally entitled to use a mechanical contrivance to do whatever he could have done if he had been present. We do not find this argument persuasive.
Initially, we note that the court in Plumlee specifically refused to categorize the issue before it in such general terms. The court set forth the issue as follows:
The question whether a man is excusable for taking human life merely and solely for the purpose of protecting his property is not at issue and we shall not discuss the case from that standpoint. The only question involved under this point is whether one is excusable for slaying another who is in the act of stealing property of inconsiderable value. 149 So. at 429.
The court refused to set forth a general principal that a person can do indirectly what he might be privileged to do directly. The court found that Plumlee could not kill by contrivance a man against whom he would not have been privileged to use deadly force. Therefore, we reject defendant's argument that Plumlee authorizes the use of deadly force by machine under any circumstance in which the property owner might have been authorized to do so.
Moreover, we disagree with defendant's basic premise that he was legally authorized to indiscriminately kill any person who opened the back door to his home a distance of two to four inches. La.R.S. 14:20(4) authorizes the use of deadly force (1) by a person inside a dwelling, (2) against someone who has made or is attempting an unlawful entry to that dwelling, and (3) the person committing the homicide reasonably believes the use of deadly force is necessary to prevent the entry or to compel the *674 intruder to leave the premises. The use of a mechanical device pretermits the existence of the third required element, the exercise of human discretion.
Quoting extensively from State v. Plumlee, in People v. Ceballos, 12 Cal.3d 470, 116 Cal.Rptr. 233, 526 P.2d 241 (1974), the California Supreme Court succinctly set forth the danger to society as a whole created by the use of such devices, as follows:
Allowing persons, at their own risk, to employ deadly mechanical devices imperils the lives of children, firemen and policemen acting within the scope of their employment, and others. Where the actor is present, there is always the possibility he will realize that deadly force is not necessary, but deadly mechanic devices are without mercy or discretion. Such devices "are silent instrumentalities of death. They deal death and destruction to the innocent as well as the criminal intruder without the slightest warning. The taking of human life (or infliction of great bodily injury) by such means is brutally savage and inhuman." [citation omitted] 526 P.2d at 244.
Therefore, we find that the use of a mechanical device, set to automatically discharge, cannot insulate the party who installed it from the responsibility for the death or destruction it causes under the guise of justifiable homicide.
Defendant also argues that the state failed to prove that he was not at home at the time the shot was fired; thus, the state failed to eliminate the possibility that the shooting might have been justified because defendant was present and the killing was, therefore, directly within the purview of La.R.S. 14:20(4). Justification is an affirmative defense; the burden of proof is upon defendant to establish by a preponderance of the evidence that the elements of the defense are present. See State v. Cheatwood, 458 So.2d 907 (La.1984). Moreover, as previously noted, the use of a mechanical device to shoot intruders eliminates the possibility that the three elements of a justifiable homicide can possibly be established because no determination was made that the use of deadly force was actually necessary to prevent the unlawful entry.
Defendant further argues that the state failed to prove that the victim died because he was shot with the gun. He bases this argument on the fact that the victim's shirt was not analyzed to determine if gunpowder residue and blood were present; nor did the state introduce the bullet or establish that the bullet was fired from defendant's gun.
During the autopsy, a large caliber projectile was discovered between the victim and the shirt he wore. The state's pathologist, Dr. Alfredo Suarez, testified that the bullet entered the victim's body near the left clavicle and travelled downward, piercing his heart and left lung. Defendant's pathologist, Dr. James Freeman, testified that the bullet could not have perforated Cavell's lung and that the autopsy protocol formulated by Dr. Suarez did not indicate that any damage was done to the victim's skeletal frame. Freeman also testified that it was highly unlikely that a large caliber bullet could have entered the victim at that angle without touching and fracturing any of his bones.
Pictures taken at the scene when the body was found graphically illustrate that the victim's internal organs had disappeared through the actions of carnivorous insects and decay. Through the drying actions of the wind and heat, portions of the victim's skin had mummified, while other areas, including most of the upper torso, had decomposed and vanished. The autopsy was not, therefore, as complete as it might have been under other circumstances. Indisputably, however, the body was found on defendant's porch with a bullet at the back of the shirt, in the line of fire of Britt's trap gun. The path of a bullet, traversing several bags of garbage after blasting through the boarded up window, was clearly visible to the investigators. Photographs introduced into evidence also illustrate this path and show a red stain dripping on the curtain from the area of the bullet hole. While other scientific tests might have been performed in connection *675 with the autopsy, a rational trier of fact could have found that the victim's death was caused by the bullet emanating from the gun in defendant's house. This assignment of error has no merit.

ASSIGNMENT OF ERROR 3
By this assignment of error, defendant contends the trial court erred by imposing an excessive sentence. He argues that the court erred by subjecting him to incarceration, rather than imposing a suspended sentence.
In sentencing Britt, the trial court referred to several reports, including psychological evaluations and the presentence investigation. The court noted that the psychological evaluations indicate that defendant was not presently a danger to himself or society but had very severe problems with his outlook and attitude. The court stated that it interpreted the psychological evaluations to indicate defendant was not a danger to society in certain limited circumstances, specifically, almost total isolation. The court also noted there was no assurance that defendant would not be placed in another stressful situation or one that Britt would deem to be a serious threat to himself. The court then opined that, based on this profile and the psychological evaluations, it was likely that during a probationary sentence period defendant could and probably would commit another crime if he were put in a similar situation.
Defendant argues that the court is punishing him for exercising the right to defend himself and his home, an invalid and unconstitutional reason for denying probation. It is apparent, however, that the court punished Britt for the manner in which he exercised his right of self-defense, not simply for exercising it.
The trial court has wide discretion in the imposition of sentences, and a sentence within statutory guidelines will not be set aside unless it is found to be an abuse of discretion. State v. Wardlow, 448 So.2d 257 (La.App. 1st Cir.1984). The transcript of the sentencing hearing indicates that the trial court very carefully considered the circumstances of the instant offense and specifically tailored the sentence it imposed to both the defendant and the facts of this case. We find no abuse of discretion.
Therefore, the conviction and sentence are affirmed.
AFFIRMED.
CARTER, J., concurs.