Filed 6/30/14  P. v. Davis CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DAVID D. DAVIS,<br><br>     Defendant and Appellant. | A136826<br><br>(Solano County<br>Super. Ct. No. VCR208281) |

David D. Davis appeals from a judgment of conviction and sentence after a jury convicted him of battery (Pen. Code, § 242) and battery against a sports official (§ 243.8).[1]  He contends (1) the prosecutor exercised a peremptory challenge based on race, in violation of his equal protection rights; and (2) his battery conviction must be reversed because battery is a lesser included offense of battery against a sports official. We will reverse the battery conviction and affirm the judgment in all other respects.

## I.  FACTS AND PROCEDURAL HISTORY

Davis was charged with battery with serious bodily injury (§ 243, subd. (d)) and battery against a sports official (§ 243.8, subd. (a)).  Allegedly, he punched an umpire in the head after being ejected from a youth baseball game.  The matter proceeded to a jury trial.

---

[1]    All statutory references are to the Penal Code.

A.  Jury Selection

During voir dire, the prosecutor had the following exchange with prospective juror M.W.:  "[PROSECUTOR]: [M.W.], how are you?  [¶] PROSPECTIVE JUROR: I'm good.  [¶] [PROSECUTOR]: I don't know [if] we have heard from you today, so I'll ask you a question.  What is your definition of serious bodily injury?  [¶] [DEFENSE COUNSEL]: I would object.  [¶] THE COURT: Sustained.  [¶] [PROSECUTOR]: [M.W.], let's say your definition in your mind of [serious] bodily injury differs from what the judge instructs on what the law is, if that arises, would you have difficulty following the law as the judge instructs you?  [¶] PROSPECTIVE JUROR: No. [¶] [PROSECUTOR]: Okay.  Why not?  [¶] PROSPECTIVE JUROR: Sometimes you have to defend yourself.  [¶] [PROSECUTOR]: What do you mean sometimes you have to defend yourself?  [¶] PROSPECTIVE JUROR: It's my life, and I would try to protect my life, to avoid anything in any way I can.  [¶] [PROSECUTOR]: My question put another way is, will you follow the law in this case as the judge instructs you to follow the law, or will you reject the law and follow the law the way you think it should be written or the way you think it should be?  [¶] PROSPECTIVE JUROR: I would have to listen to what she says.  [¶] [PROSECUTOR]: So you have no problem if there is a conflict between the way you think things should be and the way the law is written?  You have no problem following the law?  [¶] PROSPECTIVE JUROR: I don't have any problem."

After the attorneys finished questioning the prospective jury, the prosecutor passed on his right to exercise a peremptory challenge, indicating his acceptance of the panel that included M.W.  Once the defense exercised a peremptory challenge, however, the prosecutor began to exercise peremptory challenges too.  The prosecutor excused two other prospective jurors, and then excused M.W. with his third peremptory challenge.

Defense counsel objected to the prosecutor's challenge of M.W., contending it was based solely on race.  Counsel noted that both M.W. and Davis were African-American; he also opined that neither M.W.'s juror questionnaire nor her body

2

language or responses to the prosecutor's questions suggested she could not be a fair and impartial juror.

The court noted that two other apparent African-Americans had already been excused by the parties' stipulation, leaving M.W. and another African-American on the panel and five or six others in the jury pool. Nonetheless, the court asked the prosecutor to explain his reasons for excusing M.W.

The prosecutor stated that M.W.'s response to his first question was "non-responsive to the question that I had posed." Specifically, when he asked her about great bodily injury, M.W. replied, "Sometimes you just have to defend yourself." The prosecutor believed that M.W. was thinking "in terms of self-defense only without anybody mentioning about it."

In addition, the prosecutor stated: "I was looking at her body language. She was leaning forward, kind of away from me and that kind of gave me a gut feeling that she wouldn't be the best juror for this case. [¶] I then talked to her some more about her feelings, and she gave sort of quick answers, one word, Yes. No."

The court asked the prosecutor why he initially passed his challenge even though M.W. was part of the panel. The prosecutor responded, "Because the first time, I didn't go by my gut instincts, and then once the gut instinct kicked in, is why I excused her."

The court next recounted its own observations of the voir dire of M.W.: "I'll share with you when she made her response, I did make a large note. I noted that she did not give the question, [M.W.] did not give the question that was presented to her by [the prosecutor]. It kind of reminded me a little bit of [another prospective juror] who did not appear to be following and tracking very well."

Defense counsel insisted that M.W.'s answer had been responsive to the prosecutor's question. The court disagreed: "No. He asked her, 'If the Court gives you a definition of serious bodily injury and your own personal definition is different, would you be able to follow the court's instruction?' And she responded, indicating,

'Sometimes I think self-defense is necessary,' and it didn't track the question that was presented to her. I made a big note of it."

The prosecutor further explained his delay in challenging M.W. "[B]ecause of the sensitivities involved in race in this case, I was reluctant to kick [M.W.], and then after passing, once my instincts told me that she wasn't the proper juror in [this] case because of her response, I exercised my intent to challenge her, peremptory challenge."

The court concluded: "I am not going to find based upon this single exercise of a peremptory, that the peremptory was exercised for anything other than a racially neutral reason, and I would note my very basic issue was the way that she did answer the questions previously. [¶] However, I would certainly consider this exclusion if it were to become an issue and a pattern, and I would not be opposed to [defense counsel] renewing that motion should he have additional facts to support." M.W. was excused.

B. Evidence at Trial

On July 18, 2010, victim David Abbitt was a field umpire for a Babe Ruth League state championship baseball game between a team from Vallejo and a team from Sonoma. Abbitt was positioned near second base, and his responsibilities included determining whether runners reached first base and second base safely. Davis was the first-base coach for the Vallejo team.

In the first inning, Abbitt called a Vallejo player out at second base. Davis ran from his first-base coach's box to dispute the call, coming "face-to-face" with Abbitt. Abbitt warned Davis that he could not enter the field to protest a call.

In the sixth inning, Abbitt called a Vallejo player out at first base. Davis again entered the field and, appearing very upset, yelled at Abbitt "with his hands in the air." Abbitt told Davis that he had been warned earlier, and ejected Davis from the game.

Davis continued to yell at Abbitt. Abbitt approached him, saying, "You're gone. You're gone. You are gone. Get out of here, gone. Get back out there." Abbitt came within an arm's length of Davis and was looking at him "straight on," when Davis

pointed toward the home plate umpire and told Abbitt to "look at your partner." When Abbitt did this, Davis "loaded up a fist and swung around and hit" him. Abbitt testified that he felt a "big bang in [his] head," "heard [his] head explode," and "[t]hen the lights went out." The next thing he remembered, he was on the ground, seeing "people looking down at me, and I see the blue sky above." Abbitt was bleeding, seemed unconscious for 20 to 25 seconds, and was transported to the hospital.

Davis testified to a different version of events. He claimed that, when he protested Abbitt's call in the sixth inning, he raised his hand to request a time-out. Abbitt responded by approaching Davis, telling him several times to "get the fuck off the field," and gesturing that Davis was ejected from the game. Davis became afraid. Abbitt told him, "I'll kick your ass to the parking lot" and "Take your monkey and get off the field." He might have used the word "Leroy" twice too. He was enraged, slobbering, and spitting. When Abbitt next said, "You're going to get the fuck off the field," Davis thought that Abbitt was "going to come down and smash" him, so Davis merely "threw his hands" and Abbitt "laid himself on the ground."

C. Jury's Verdict and Sentence

The jury found Davis not guilty of battery with serious bodily injury, but guilty of the lesser included offense of simple battery (§ 242); the jury also found Davis guilty of battery against a sports official.

The trial court suspended imposition of sentence for the battery against a sports official and placed Davis on probation for three years. The court stayed punishment for the simple battery pursuant to section 654.

This appeal followed.

II. DISCUSSION

We address Davis's contentions in turn.

5

A. *Batson-Wheeler*

Davis contends the prosecutor secured the exclusion of prospective juror M.W. in violation of his constitutional rights, because the prosecutor's peremptory challenge to M.W. was solely due to M.W.'s race. Davis's claim has no merit.

The equal protection clause of the Fourteenth Amendment forbids a prosecutor from challenging a potential juror based on the juror's race or assumptions about how the juror's race may affect the juror's treatment of the case. (*Batson v. Kentucky* (1986) 476 U.S. 79, 89 (*Batson*); see *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*) [violation of state constitution], overruled in part on another ground in *Johnson v. California* (2005) 545 U.S. 162.)

"A three-step procedure applies at trial when a defendant alleges discriminatory use of peremptory challenges. First, the defendant must make a prima facie showing that the prosecution exercised a challenge based on impermissible criteria. Second, if the trial court finds a prima facie case, then the prosecution must offer nondiscriminatory reasons for the challenge. Third, the trial court must determine whether the prosecution's offered justification is credible and whether, in light of all relevant circumstances, the defendant has shown purposeful race discrimination. [Citation.]" (*People v. Manibusan* (2013) 58 Cal.4th 40*, 75 (*Manibusan*); see *Batson, supra*, 476 U.S. at pp. 94, 97-98.) The burden is on the defendant to show it was more likely than not that the challenge was racially motivated. (See *Manibusan, supra*, 58 Cal.4th at p. 75.)

Here, the parties agree (or assume) that the trial court found that Davis had established a prima facie case, since the court asked the prosecutor to give a reason for the challenge. At issue in this appeal, therefore, is the third step of the procedure—the trial court's determination that the prosecutor's justification was credible.

In this regard, the trial court must make "a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case as then known, his knowledge of trial techniques, and his observations of the manner in which the prosecutor has examined members of the venire and has exercised challenges for cause or peremptorily." (*People v. Hall* (1983) 35 Cal.3d 161, 167-168; see *Batson*,

6

*supra*, 476 U.S. at p. 98.)  The credibility of a prosecutor's stated reasons "can be measured by, among other factors, . . . how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy."  (*Miller-El v. Cockrell* (2003) 537 U.S. 322, 339.)  " ' "[E]ven a 'trivial' reason, if genuine and neutral will suffice."  [Citation.]  A prospective juror may be excused upon facial expressions, gestures, hunches, and even for arbitrary or idiosyncratic reasons.'  [Citation.]"  (*People v. Jones* (2013) 57 Cal.4th 899, 917 (*Jones*).)

Davis raises two issues:  (1) the standard of review, and (2) the sufficiency of the evidence.

### 1.  Standard of Review

Generally, a trial court's determination of the credibility of the prosecutor's reasons for excusing a juror is reviewed for substantial evidence.  (*Manibusan, supra,* 58 Cal.4th at p. 76.)  "The trial court is in the unique position of assessing demeanor, tone, and credibility firsthand—factors of critical importance in assessing the attitude and qualifications of potential jurors."  (*People v. Garcia* (2011) 52 Cal.4th 706, 743, citation and internal quotation marks omitted.)  Thus, "where answers given on voir dire are 'equivocal or conflicting,' the trial court's evaluation of the person's state of mind is generally binding on the reviewing court.  [Citation.]"  (*Ibid.*)

This deference is afforded " 'only when the trial court has made a sincere and reasoned attempt to evaluate each stated reason as applied to each challenged juror.'  [Citation.]  'When the prosecutor's stated reasons are both inherently plausible and supported by the record, the trial court need not question the prosecutor or make detailed findings.  But when the prosecutor's stated reasons are either unsupported by the record, inherently implausible, or both, more is required of the trial court than a global finding that the reasons appear sufficient.' "  (*People v. Williams* (2013) 56 Cal.4th 630, 653 (*Williams*); *People v. Lewis* (2008) 43 Cal.4th 415, 469-470.)

Here, the court made a sincere and reasoned attempt to evaluate the prosecutor's reasons for excusing M.W. The court tested the prosecutor's claim that M.W.'s answer to his question was nonresponsive, by comparing it to the court's own recollection and contemporaneous notes of the questioning that had just occurred; and the court found that it too had independently recorded a similar concern about M.W.'s nonresponsiveness. Specifically, the court explained, the prosecutor asked M.W. about her willingness to follow instructions on great bodily injury, but M.W. responded by asserting her belief in self-defense. In addition, the court asked the prosecutor to explain why he had initially passed on his right to exercise a peremptory challenge, and the court entertained argument from defense counsel as well. The court further considered the composition of the panel and noted that M.W. was the only African-American the prosecutor had sought to excuse by a peremptory challenge. And then the court reiterated its reason for overruling Davis's objection on the record, explaining that the "very basic issue was the way that she did answer the questions previously." The prosecutor's justification was inherently plausible and supported by the record, and no further detailed findings by the court were necessary. Accordingly, the substantial evidence standard applies. (*Manibusan, supra*, 58 Cal.4th at pp. 76-77.)

As discussed next, Davis's arguments to the contrary are meritless.

### a. Justice Liu's Separate Opinions

Davis first asserts that in *People v. Mai* (2013) 57 Cal.4th 986, 1048 (*Mai*), our Supreme Court noted that deference should be granted to the trial court's view of the credibility of the prosecutor's justifications, unless the record shows that the court did not carry out its duty to subject the prosecutor's assertions to sincere and reasoned analysis. Thus, under *Mai*, the trial court's ruling may be treated with deference even if the court's analysis is not detailed in the record. Then Davis urges us not to follow *Mai*, but to apply a rule advocated by Justice Liu's concurrence in *Mai* and his dissent in *Williams*. (See *Mai, supra*, 57 Cal.4th at pp. 1058-1060, 1074; *Williams, supra*, 56 Cal.4th at pp. 699-

8

728.) In Justice Liu's view, deference is *not* warranted " 'when a trial court fails to make explicit findings or to provide any on-the-record analysis of the prosecution's stated reasons for a strike.' " (*Mai, supra*, 57 Cal.4th at p. 1059 (conc. opn. of Liu, J.); *Williams, supra*, 56 Cal.4th at p. 717 (dis. opn. of Liu, J.).) In essence, Justice Liu urges that the substantial evidence standard should not apply if the trial court *summarily* denied a *Batson/Wheeler* motion.

Davis's argument is unavailing. In the first place, unlike the trial courts in *Mai* and *Williams*, the court in this case *did* engage in a detailed on-the-record analysis of the prosecutor's claimed justification for the peremptory challenge. Therefore, the tension between the majority opinion in *Mai* and Justice Liu's separate opinions is immaterial; indeed, Justice Liu acknowledged in *Mai* that deference *should* be granted to the trial court where, as here, the court expressed its reasoning on the record. (*Mai*, *supra*, 57 Cal.4th at p. 1059 (conc. opn. of Liu, J.).) At any rate, if called upon to choose between the majority opinion in *Mai* and Justice Liu's separate opinions, we would have to follow the majority opinion. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Concurring and dissenting opinions are not binding precedent. (*People v. Ceballos* (1974) 12 Cal.3d 470, 483; *People v. Lopez* (2012) 55 Cal.4th 569, 585.)

### b. Snyder

Davis next insists the rule espoused in *Mai* was "soundly rejected" by the United States Supreme Court in *Snyder v. Louisiana* (2008) 552 U.S. 472 (*Snyder*). He argues that, like our Supreme Court in *Mai*, the dissent in *Snyder* opined that a trial court should not be required to make findings on the credibility of the prosecutor's rationales, ambiguities should be resolved in favor of the judgment, and the court's ruling should be accorded substantial deference unless its express findings were plainly contradicted by the record. (*Id*. at pp. 486-487 (dis. opn. of Thomas, J.).)

Davis's argument has no merit. First, the argument is irrelevant, again because the court in this case *did* provide detailed reasons for overruling Davis's *Batson/Wheeler* objection. Second, Davis's argument is suspect on its face, since it would be quite odd if

9

our Supreme Court in *Mai* chose to perpetuate a rule that had been "soundly rejected" by the United States Supreme Court five years earlier, and then manage to escape the high court's review. (See *Mai v. California* (2014) 134 S.Ct. 2142 [denying petition for writ of certiorari].) Indeed, the *Mai* court certainly did not think it was out of line with *Snyder*, since it vowed to continue to follow its rule of deference "until the United States Supreme Court articulates a contrary rule." (*Mai, supra*, 57 Cal.4th at p. 1049, fn. 27.) Third, Davis's argument is simply wrong. The fact that the dissent in *Snyder* advocated a rule does not mean that the majority in *Snyder* held that the rule was incorrect. To the contrary, nowhere in *Snyder* does it say that a trial court's evaluation of the prosecutor's justification cannot be affirmed upon substantial evidence merely because the court had failed to make express findings in support of its ruling. Nor did *Snyder* hold that, without such findings, it could not be presumed that the court had engaged in the requisite analysis. (*Thaler v. Haynes* (2010) 559 U.S. 43, 47-49 (*Thaler*); see *Snyder, supra*, 552 U.S. at p. 479.)[2]

### c. *Sincere and Reasoned Attempt to Evaluate the Reasons*

Lastly, Davis argues, the substantial evidence standard should not be applied because the trial court in this case did not undertake a "reasoned attempt" to investigate the prosecutor's motivations. Davis's sole basis for this claim is his assertion that, instead of reviewing the "record" of voir dire, the court relied on its contemporaneous notes of the proceedings which, Davis claims, "misrepresented" what the prosecutor and

---

[2] In *Snyder*, the prosecutor asserted two justifications for his peremptory challenge of a prospective African-American juror: his nervousness and his obligations as a student-teacher. (*Snyder, supra*, 552 U.S. at p. 478.) The trial court overruled the defendant's *Batson* objection without explanation, and without a finding as to the juror's demeanor. (*Id*. at p. 479.) The Supreme Court held that the prosecutor's second justification failed, and because the trial court had overruled the objection without an explanation or a finding regarding the juror's demeanor, the court's ruling could not be upheld on the demeanor-based justification either. (*Ibid*.) As the Supreme Court has since clarified, the reason for this holding was *not* simply because the trial court had made no finding about (or had no recollection of) the juror's demeanor, but because, under the circumstances of that case, the demeanor-based ground "might not have figured in the trial judge's unexplained ruling." (*Thaler, supra*, 559 U.S. at pp. 48-49.)

M.W. said.  He asserts:  "Clearly, the trial court was either paying less than close attention during the exchange or did not hear what was actually said. In either case, the court relied on a faulty version of what actually happened and failed to undertake an inquiry adequate to establish the actual facts."

Davis's aspersions are unfounded.  The court described the exchange as follows: "[The prosecutor] asked [M.W.], 'If the Court gives you a definition of serious bodily injury and your own personal definition is different, would you be able to follow the Court's instruction?' And she responded, indicating, 'Sometimes I think self-defense is necessary.' "  Davis insists this was wrong, because in immediate response to whether her personal definition of great bodily injury would preclude her from following the law as the court instructed, M.W. initially said, "No."  But the point is that, when the prosecutor asked the next question, "Why not?"—that is, why she would not have difficulty following the court's instruction—M.W. responded with her view as to the necessity for self-defense.  The court therefore recalled the gist of the exchange quite accurately: M.W.'s mention of "self-defense" was not responsive to the prosecutor's inquiry about her willingness to follow the court's instructions with respect to serious bodily injury. Thus, while Davis contends "the court did not review the voir dire as a whole," it is Davis who fails to do so.

The substantial evidence standard applies.

### 2. Sufficiency of the Evidence

The prosecutor explained that he exercised a peremptory challenge as to M.W. because of (1) her nonresponsive answer to his question, (2) her body language, and (3) her "quick answers" limited to yes or no.  The trial court explicitly based its ruling on

11

the way M.W. answered the prosecutor's question. Substantial evidence supports the finding that the prosecutor had a credible, nondiscriminatory reason for excusing M.W.[3]

After M.W. answered no to the prosecutor's question—indicating that she would not have any difficulty following the court's instruction on serious bodily injury if it differed from her own definition of serious bodily injury—the prosecutor asked M.W., "Why not?" M.W. replied, "Sometimes you have to defend yourself." When asked to explain, she added, "It's my life, and I would try to protect my life, to avoid anything in any way I can." A reasonable inference from this exchange is that M.W. did not understand the prosecutor's questions: he was plainly asking her why she would not have difficulty following the court's instruction on serious bodily injury, yet she responded with her views on the need for self-defense. A prospective juror's apparent inability to comprehend questioning is an acceptable race-neutral reason to exercise a peremptory challenge. (See *People v. Turner* (1994) 8 Cal.4th 137, 169.)

Davis's arguments to the contrary are meritless. First, he asserts that M.W. started talking about self-defense because other jurors had discussed the topic during voir dire. But that is the whole point. Those other jurors had discussed self-defense when asked *about* "self-defense," not about "serious bodily injury." Her mention of self-defense without being questioned about self-defense reasonably suggested that M.W. misunderstood the question, misheard it because she remained unduly captivated

---

[3] To resolve the appeal, we need only decide the sufficiency of the prosecutor's explanation that he was concerned with M.W.'s nonresponsiveness to his questions. In regard to the prosecutor's alternative (or supplemental) explanation that he was concerned with her body language, Davis contends the court made no finding about M.W.'s body language, while respondent contends the court made this finding when it expressed concern with "the *way*" M.W. answered the questions (italics added). The parties also debate whether a court's failure to make findings about a juror's body language precludes the use of body language evidence to affirm the court's ruling. We do not decide these issues. We do observe, however, that nothing in the record shows that the prosecutor's reference to M.W.'s body language was merely pretextual.

12

by the topic of self-defense, or was relying on other jurors' responses to formulate her own response to the question.[4]

Next, Davis suggests the prosecutor's initial willingness to accept M.W. on the jury shows that his explanations were a sham. We disagree. In the first place, a prosecutor may pass up the initial opportunity to invoke a peremptory challenge for tactical reasons, if he or she believes the defense will exercise one of its challenges—particularly if the defense will likely excuse a juror the prosecutor would also want to excuse. Certainly the initial decision *not* to challenge M.W. does not mean he wanted to exclude her due to race.

Indeed, by passing on his initial opportunity to exercise a challenge, the prosecutor ran a risk of *having* M.W. on the jury, which strongly indicates that he did not exercise his peremptory challenge on the basis of race. (*Williams, supra*, 56 Cal.4th at p. 659; *People v. Lomax* (2010) 49 Cal.4th 530, 576.)

Finally, the prosecutor's explanation for his initial acceptance of the jury was reasonable. At first the prosecutor was reluctant to challenge M.W. "because of the sensitivities involved in race," but then his "instincts told [him] that she wasn't the proper juror in [this] case because of her response." In short, he had second thoughts.

Davis argues that, once a defendant makes out a prima facie case of discrimination, "there is no means by which a *gut instinct* could adequately rebut the prima facie case." Our Supreme Court disagrees. (See *Jones, supra*, 57 Cal.4th at p. 917 [" 'A prospective juror may be excused based upon . . . *hunches*, and even for arbitrary or idiosyncratic reasons' " (italics added)].) In any event, Davis

---

[4]     The prosecutor expressed concern that M.W. was "thinking in her mind in terms of self-defense only without anybody mentioning about it." Davis asserts that M.W. did not literally talk about self-defense "without anybody mentioning about it," because self-defense had been mentioned previously when the court and defense counsel asked prospective jurors about their views on self-defense, and another prospective juror expressed an unwillingness to follow the court's self-defense instructions. Obviously, the prosecutor's point was not that no one had mentioned self-defense throughout the entirety of voir dire, but that M.W. started talking about self-defense without the prosecutor asking her about it.

13

misunderstands what the prosecutor was saying. He was not claiming that he challenged M.W. based on a gut instinct, in the sense of a feeling that could not be explained by reference to objective criteria; rather, he was saying that he had a gut instinct about the *significance* of M.W.'s nonresponsive answer to his question. In other words, the prosecutor's instinct was not the ground he had for a peremptory challenge, but the reason he decided to *assert* the challenge.

In sum, ample evidence supported the trial court's determination that Davis failed to show the prosecutor's excusal of M.W. was based on race.

B. Battery Conviction

Davis contends the trial court erred when it did not reverse his simple battery conviction, because battery is a lesser included offense of battery against a sports official. "[M]ultiple convictions may *not* be based on necessarily included offenses." (*People v. Pearson* (1986) 42 Cal.3d 351, 355.) If the evidence supports the verdict as to the greater offense, the conviction of the lesser offense must be reversed. (*People v. Moran* (1970) 1 Cal.3d 755, 763.) "[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]" (*People v. Birks* (1998) 19 Cal.4th 108, 117-118.)

Here, battery is "any willful and unlawful use of force or violence upon the person of another." (§ 242.) Battery against a sports official occurs "when a *battery* is committed against a sports official immediately prior to, during, or immediately following an interscholastic, intercollegiate, or any other organized amateur or professional athletic contest in which the sports official is participating, and the person who commits the offense knows or reasonably should know that the victim is engaged in the performance of his or her duties." (§ 243.8, italics added.) Respondent agrees that simple battery is the lesser included offense of battery against a sports official,

14

because a person cannot complete the crime of battery against a sports official without necessarily committing a battery.

Accordingly, respondent asserts that this court should reverse the simple battery conviction and direct the preparation of a corrected abstract of judgment. (§ 1260.) We will so order.

## III. DISPOSITION

The conviction for simple battery (Pen. Code, § 242) is reversed. In all other respects, the judgment is affirmed. The trial court shall prepare a corrected abstract of judgment omitting the simple battery conviction.


_____
NEEDHAM, J.


We concur.


_____
JONES, P. J.


_____
SIMONS, J.


15